No. 23-1900

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

United States,

*Appellee*,

v.

Alex David Davila-Olivo

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Puerto Rico
No. 3:19-cr-716-FAB
Hon. Francisco A. Besosa

_____

**APPELLANT'S OPENING BRIEF**

_____

<div style="margin-left:40%">

W. Miles Pope
Goddard Pope PLLC
967 E. Parkcenter Blvd. No. 1010
Boise, ID 83706
(208) 329-5671
miles@goddard-pope.com
First Circuit Bar No. 1208369

*Attorneys for Appellant*
Alex David Davila-Olivo

</div>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... v

ISSUES PRESENTED ........................................................................... 1

I. Whether the lower courts violated rule 11 of the Federal Rules of Criminal Procedure and improperly pressured Mr. Davila to plead guilty, invalidating both his plea and appeal waiver. ....... 1

II. Assuming the rule 11 violations invalidate the plea and appeal waiver in this case, whether the lower courts' refusal to consider critical credibility evidence based on their erroneous view that the Federal Rules of Evidence apply to suppression hearings necessitates reversal of their denial of Mr. Davila's motion to suppress the fruits of his unlawful arrest................................... 1

III. Even if the Court enforces Mr. Davila's appeal waiver, whether it should reverse his sentence because the district court imposed numerous nonmandatory supervised release conditions without orally pronouncing or otherwise referencing them at the sentencing hearing. ..................................................................... 1

INTRODUCTION.................................................................................. 1

JURISDICTIONAL STATEMENT ......................................................... 5

STATEMENT OF THE CASE ................................................................ 6

I. Mr. Davila is charged—first with felon-in-possession, then with marijuana and § 924(c) counts, and finally with multiple carjackings and additional § 924(c) charges. .............................. 7

II. Mr. Davila pursues parallel plea negotiations and pretrial litigation....................................................................................... 7

A. Mr. Davila moves to suppress the fruits of his arrest, arguing that the arresting officer should be disbelieved

because he had previously lied under oath, but, relying on the Federal Rules of Evidence, the magistrate and district court both refuse to consider the officer's perjury, find the officer credible, and deny suppression. ........................................................................8

B.    Mr. Davila's plea negotiations are repeatedly raised on the record, culminating in hearings where the district court directly involves itself in ongoing plea negotiations. ..............................................13

1.    The *Lafler* hearing ..............................................14

2.    The subsequent pretrial hearings ......................23

III. Following the "twist your client's arm" hearing, Mr. Davila reluctantly signs a plea agreement and pleads guilty...............25

IV. Mr. Davila continues to express his desire to go to trial presentence and the PSR reveals that he has cognitive impairments making him particularly vulnerable to pressure and influence. ..............................................................28

V. Sentencing..................................................................31

ARGUMENT SUMMARY ....................................................33

STANDARDS OF REVIEW ..................................................36

ARGUMENT ........................................................................37

I. The lower courts violated rule 11 of the Federal Rules of Criminal Procedure and improperly pressured Mr. Davila to plead guilty, invalidating his plea and appeal waiver...............37

A.    Rule 11(c)(1) categorically bars judicial participation in plea negotiations. ........................................................37

B.    The district court violated rule 11(c)(1)'s prohibition on judicial involvement in plea negotiations....................40

C. The magistrate violated rule 11(b)(1)(M) by failing to properly advise Mr. Davila about pertinent aspects of federal sentencing law at his change of plea hearing. 47

D. The rule 11 errors were preserved, and the government cannot show they were harmless..................................50

E. Even if unpreserved, the rule 11 errors were plain. ...53

F. The rule 11 errors in this case invalidate Mr. Davila's appeal waiver and guilty plea......................................57

II. Assuming the rule 11 violations invalidate the plea and appeal waiver, whether the lower courts' refusal to consider critical credibility evidence based on their erroneous view that the Federal Rules of Evidence apply to suppression hearings necessitates reversal of their denial of Mr. Davila's motion to suppress the fruits of his unlawful arrest..................................58

III. Even if the Court enforces Mr. Davila's appeal waiver, it should reverse his sentence because the district court imposed numerous nonmandatory supervised release conditions without orally pronouncing or otherwise referencing them at the sentencing hearing. ...................................................61

CONCLUSION .........................................................64

CERTIFICATE OF COMPLIANCE.........................................66

CERTIFICATE OF SERVICE..............................................67

ADDENDUM...........................................................68

# TABLE OF AUTHORITIES

**Cases**

*Dean v. U.S.*, 581 U.S. 62 (2017) .......................................................... 3, 43

*Demoski v. State*, 2024 Alas. App. LEXIS 40 (Alaska App. 2024) ......... 36

*Kimbrough v. U.S.*, 552 U.S. 85 (2007) .................................................. 48

*Missouri v. Frye*, 566 U.S. 134 (2012) .......................................... 2, 15, 44

*Nelson v. U.S.*, 555 U.S. 350 (2009) ...................................................... 43

*Rita v. U.S.*, 551 U.S. 338 (2007) .......................................................... 47

*Rosin v. U.S.*, 522 F. App'x 578 (11th Cir. 2013) .................................. 55

*Scholz v. Goudreau*, 901 F.3d 37 (1st Cir. 2018) .................................. 37

*Smith v. Cain*, 132 S. Ct. 627 (2012) .................................................... 55

*Tassi v. Holder*, 660 F.3d 710 (4th Cir. 2011) ...................................... 60

*U.S v. Casallas*, 59 F.3d 1173 (11th Cir. 1995) ......................... 38, 41, 46

*U.S. v. Begay*, 497 F. Supp. 3d 1025 (D.N.M. 2020) ............................. 15

*U.S. v. Beird*, 217 F.3d 15 (1st Cir. 2000) ............................................. 39

*U.S. v. Betancourt-Perez*, 833 F.3d 18 (1st Cir. 2016) ........................... 57

*U.S. v. Borrero Acevedo*, 533 F.3d 11 (1st Cir. 2008) ............................. 54

*U.S. v. Bradley*, 455 F.3d 453 (4th Cir. 2006) ....................................... 56

*U.S. v. Bradley*, 455 F.3d 453 (9th Cir. 2006) ....................................... 55

*U.S. v. Braxton*, 784 F.3d 240 (4th Cir. 2015) ........................... 44, 45, 57

*U.S. v. Brown*, 805 F.3d 13 (1st Cir. 2015) ........................................... 61

*U.S. v. Bruce*, 976 F.2d 552 (9th Cir. 1992) ...................... 38, 39, 41, 56

*U.S. v. Cano-Varela*, 497 F.3d 1122 (10th Cir. 2007) ............................ 37

*U.S. v. Chambers*, 710 F.3d 23 (1st Cir. 2013) ..................... 47, 49, 55, 57

*U.S. v. Collins*, 684 F.3d 873 (9th Cir. 2012) ................................. 36, 53

*U.S. v. Cone*, 323 F. App'x 865 (11th Cir. 2009) ...................................... 39

*U.S. v. Daigle*, 63 F.3d 346 (5th Cir. 1995) .............................................. 51

*U.S. v. Davila*, 133 S. Ct. 2139 (2013) ...................................... 36, 51, 55

*U.S. v. DeLeon*, 915 F.3d 386 (5th Cir. 2019) ......................................... 39

*U.S. v. Diaz*, 138 F.3d 1359 (11th Cir. 1998) ......................................... 39

*U.S. v. Dominguez-Benitez*, 542 U.S. 74 (2004) .................................... 51

*U.S. v. Feliz*, 794 F.3d 123 (1st Cir. 2015) ............................................ 11

*U.S. v. Ferron*, 357 F.3d 722 (7th Cir. 2004) ......................................... 60

*U.S. v. Harrell*, 751 F.3d 1235 (11th Cir. 2014) .................................... 42

*U.S. v. Hemphill*, 748 F.3d 666 (5th Cir. 2014) ........................... 2, 15, 39

*U.S. v. Irizarry-Sisco*, 87 F.4th 38 (1st Cir. 2023) ................................. 36

*U.S. v. Kearn*, 54 F.4th 1225 (10th Cir. 2022) ....................................... 15

*U.S. v. Kyle*, 734 F.3d 956 (9th Cir. 2013) ....................................... 38, 56

*U.S. v. Miranda*, 654 F.3d 130 (1st Cir. 2011) ....................................... 57

*U.S. v. Nardozzi*, 2 F.4th 2 (1st Cir. 2021) ............................................ 62

*U.S. v. Ortiz-Garcia*, 665 F.3d 279 (1st Cir. 2011) ........................... 51, 53

*U.S. v. Paul*, 634 F.3d 668 (2d Cir. 2011) .............................................. 44

*U.S. v. Pena*, 676 F. Supp. 3d 978 (D.N.M. 2021) .............................. 2, 15

*U.S. v. Platte*, 577 F.3d 387 (1st Cir. 2009) ........................................... 36

*U.S. v. Ramos-Mejia*, 721 F.3d 12 (1st Cir. 2013) ................................. 58

*U.S. v. Rodriguez*, 197 F.3d 156 (5th Cir. 1999) .................................... 41

*U.S. v. Schaefer*, 87 F.3d 562 (1st Cir. 1996) .................................. 11, 59

*U.S. v. Sepulveda-Contreras*, 466 F.3d 166 (1st Cir. 2006) .................... 37

*U.S. v. Sevilla-Oyola*, 770 F.3d 1 (1st Cir. 2014) ................................... 51

*U.S. v. Singletary*, 984 F.3d 341 (4th Cir. 2021) .................................... 63

*U.S. v. Tancil*, 817 F. App'x 234 (7th Cir. 2020)......................................63

*U.S. v. Texeira-Nieves*, 23 F.4th 48 (1st Cir. 2022) ..............................48

*U.S. v. Ushery*, 785 F.3d 210 (6th Cir. 2015).........................................46

*U.S. v. Werker*, 535 F.2d 198 (2d Cir. 1976) ........................................41

*U.S. v. Whitmore*, 359 F.3d 609 (D.C. Cir. 2004)...........................10, 60

**Statutes**

18 U.S.C. § 3231 .......................................................................................5

18 U.S.C. § 3553(a)...............................................................3, 34, 43, 50

21 U.S.C. § 1291 .......................................................................................5

**Rules**

Fed. R. App. P. 4......................................................................................5

Fed. R. Crim. P. 11 ...............................................................37, 38, 47, 48

# ISSUES PRESENTED

I. Whether the lower courts violated rule 11 of the Federal Rules of Criminal Procedure and improperly pressured Mr. Davila to plead guilty, invalidating both his plea and appeal waiver.

II. Assuming the rule 11 violations invalidate the plea and appeal waiver in this case, whether the lower courts' refusal to consider critical credibility evidence based on their erroneous view that the Federal Rules of Evidence apply to suppression hearings necessitates reversal of their denial of Mr. Davila's motion to suppress the fruits of his unlawful arrest.

III. Even if the Court enforces Mr. Davila's appeal waiver, whether it should reverse his sentence because the district court imposed numerous nonmandatory supervised release conditions without orally pronouncing or otherwise referencing them at the sentencing hearing.

# INTRODUCTION

Alex David Davila-Olivo is a cognitively impaired and highly suggestible individual who repeatedly expressed his desire to go to trial but ended up pleading guilty and waiving his appellate rights (SAP-151-52 ¶ 106; App-518; App-580; App-611; App-638; App.-593-608[1]). This Court should reverse his conviction and sentence because those decisions to plead and to waive were improperly influenced by the trial court's violations of rule 11 of the Federal Rules of Criminal Procedure.

---

[1] "App." refers to the Appendix; "SAP" refers to the Sealed Appendix; "Add." refers to the Addendum.

1

First, the trial court violated rule 11(c)(1) when it improperly injected itself into ongoing plea negotiations between Mr. Davila and the government and pressured Mr. Davila to plead guilty. Before plea negotiations had been finalized, the district court held what it characterized as a "*Lafler* hearing" to explore the contours of the government's plea offer (App.-526-575). That hearing went well beyond the limited purpose of a *Lafler* hearing.[2] The trial court did not simply allow the government to memorialize its plea offer on the record, confirm with defense counsel that she had conveyed the terms of that offer to Mr. Davila, and confirm that Mr. Davila rejected it.

Instead, the trial court undertook a lengthy inquiry into exactly what Mr. Davila's guidelines would be if he went to trial (App.-537-557).

---

[2] Pretrial *Lafler* hearings are a prophylactic guard against "late, frivolous, or fabricated" postconviction claims that defense counsel failed to communicate the terms of any plea offer they received. *Missouri v. Frye*, 566 U.S. 134, 146 (2012); *see also Lafler v. Cooper*, 566 U.S. 156 (2012). Because *Lafler* hearings present a high risk of improper judicial involvement in plea negotiations, "the inquiry that a court may conduct in a *Lafler/Frye* hearing is extremely limited" and should consist in no more than ensuring that defense counsel has reviewed "the terms of the plea offer" with their client and that their client rejects those terms. *U.S. v. Pena*, 676 F. Supp. 3d 978, 981 (D.N.M. 2021) (collecting cases); *see also U.S. v. Hemphill*, 748 F.3d 666, 675 (5th Cir. 2014) (*Lafler* hearing limited to "documenting the plea offer [and] informing [the defendant] of its terms").

It explicitly compared the sentence it would impose on Mr. Davila if he went to trial—"490 to 593 months"—with the government's offer of "anything between 248 and 270 months" (App.-564). It emphasized the posttrial guidelines Mr. Davila faced without any explanation of the other sentencing considerations it would be statutorily compelled to consider—including the parsimony principle of 18 U.S.C. § 3553(a). Despite emphasizing that Mr. Davila—who was charged with multiple § 924(c) offenses—would have to receive stacked mandatory minima on top of the sentences he received for his non-924(c) crimes, it also never explained that it was expressly authorized to take those mandatory minima into account in settling on a parsimonious sentence for the non-924(c) crimes. *See Dean v. U.S.*, 581 U.S. 62, 67 (2017). It directly involved itself in plea negotiations, asking the government if it "would receive another offer" and then—when the government replied that it was "open to a counteroffer"—telegraphing its desire that the parties settle the case by immediately turning to Mr. Davila's defense counsel and saying, "Mr. Mora, did you understand that?" (App.-562). And—at a pretrial conference several weeks later—it confirmed the coercive nature and effect of the *Lafler* hearing, telling defense counsel that the

lengthy continuance it was granting at counsel's behest would enable her to "twist your client's arm" into pleading guilty (App.-590). This course of conduct violated rule 11(c)(1) and improperly influenced Mr. Davila to plead guilty and waive his appellate rights.

Second, the court intensified the impact of its improper involvement in plea negotiations when—during Mr. Davila's change of plea hearing—it violated rule 11(b)(1)(M)'s requirement that, during a change of plea hearing, the court must explain its obligation, at sentencing, "to calculate the applicable sentencing-guideline range and to consider that range, and possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)." The court failed to mention departures, only listed a handful of the § 3553(a) factors, and failed to explain any of the applicable standards of federal sentencing (App.-628-629). The court's failure to follow rule 11(b)(1)(M) and meaningfully explain how federal sentencing is supposed to work—coupled with its earlier myopic focus on the guidelines Mr. Davila would face after trial versus after he pled— applied further pressure to Mr. Davila to plead guilty.

Next, assuming it agrees with Mr. Davila that his guilty plea and appeal waiver are invalid, the Court should also reverse the district court's denial of Mr. Davila's motion to suppress the fruits of his unlawful arrest because that decision rests on crucial evidentiary and constitutional mistakes.

Finally, even if Mr. Davila's appeal waiver is upheld, the Court should reverse and remand for resentencing because, at sentencing, the district court failed to orally pronounce or even refer to numerous nonmandatory supervised-release conditions that the written judgment eventually imposed.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231, which grants district courts exclusive jurisdiction over all federal offenses.

This Court has jurisdiction to review the district court's final decision under 21 U.S.C. § 1291.

The district court entered judgment September 15, 2023 (Add.-4). On October 16, 2023—17 days after rule 4(b)(1) of the Federal Rules of Appellate Procedure's 14-day time-period for filing a notice of appeal had lapsed—counsel for Mr. Davila filed a notice of appeal (App.-667).

On November 21, 2023, counsel asked the district court to extend the notice of appeal deadline until October 16, 2023 (App.-668). The district court granted this request that same day (App.-53 (ECF No. 388)).

## STATEMENT OF THE CASE

From the moment he was first charged with carjacking—up until his sentencing hearing—Alex David Davila-Olivo repeatedly expressed his wish to go to trial (App-518; App-580; App-611; App-638; App.-593-608). Despite this, years after he was first charged; after a lengthy hearing styled a *Lafler / Frye* Hearing" at which, with the trial court's active encouragement, the government laid out its argument for why Mr. Davila should plead guilty; and shortly after the trial court, in granting yet another continuance of trial, observed in open court that continuing the case would give Mr. Davila's counsel a further opportunity to "twist [his] arm" into accepting a plea—Mr. Davila's will was overborn, and he signed a guilty plea pursuant to which he purported to waive his appellate rights (App.-526; App-590; App-593). This case primarily concerns the validity of that guilty plea.

## I. Mr. Davila is charged—first with felon-in-possession, then with marijuana and § 924(c) counts, and finally with multiple carjackings and additional § 924(c) charges.

This case began as a gun-and-drug case, then escalated to a carjacking case, before ultimately being resolved by plea to gun-and-drug charges. On October 30, 2019, Mr. Davila was charged by criminal complaint with one count of being a felon in possession of a firearm (App.-10 (ECF 1)). Subsequently, on November 6, 2019, a grand jury added marijuana-trafficking and one § 924(c) charge (App.-10 (ECF 8)). It followed those charges with additional charges on December 18, 2019 and March 11, 2020 (App.-11; App.-15). By the time the government had finished superseding its indictments, Mr. Davila ultimately faced nine counts: three § 924(c) charges, four carjacking accusations, marijuana trafficking, and felon-in-possession charges (App.-56-61).

## II. Mr. Davila pursues parallel plea negotiations and pretrial litigation.

Mr. Davila's case proceeded along parallel tracks, with defense counsel simultaneously pursuing pretrial litigation and plea negotiations. Because he was on federal supervision when he was accused of these crimes, those negotiations also encompassed a

companion revocation proceeding predicated on the charges he faced in this case.[3]

> **A.** **Mr. Davila moves to suppress the fruits of his arrest, arguing that the arresting officer should be disbelieved because he had previously lied under oath, but, relying on the Federal Rules of Evidence, the magistrate and district court both refuse to consider the officer's perjury, find the officer credible, and deny suppression.**

With respect to pretrial litigation, Mr. Davila filed an omnibus motion to suppress on March 22, 2022, which sought suppression of the fruits of his initial arrest as well as four eyewitness identifications identifying him as having been involved in the four charged carjackings (App.-62-115).[4]

In moving to suppress the fruits of his arrest, Mr. Davila focused on challenging the credibility of the arresting police officer, former officer Jose Morales-Rivera (SAP 193). Mr. Morales claimed that when he first saw Mr. Davila—on October 29, 2019, in a housing project

---

[3] Mr. Davila's trial counsel did not file a notice of appeal in the revocation proceeding so it is not before this Court at this time.

[4] Because this brief does not challenge the district court's denial of motion to suppress the witness identifications, it does not delve any deeper into this aspect of the case. Additionally, before Mr. Davila pled, the parties also submitted other pretrial filings (*See* ECF 46, 307). The guilty plea obviated this litigation so it is not at issue in this appeal.

where shots had recently been reported fired—Mr. Davila was getting out of the passenger seat of a truck with a gun in one hand, a blue bag in the other, and a green bag strapped across his chest, and beginning to run away from oncoming police (SAP 83). This testimony was critical to the government's defense of Mr. Davila's arrest, which argued that Mr. Davila was lawfully detained, in the first instance, due to his openly possessing a gun and fleeing the police in an area where shots had just been fired (SAP-8-9).

At the suppression hearing, Mr. Davila sought to undermine Mr. Morales's credibility by exposing inconsistencies in his testimony, identifying implausible factual claims he had made, and by introducing evidence that he had previously lied under oath. Mr. Davila made headway, persuading the magistrate that Mr. Morales's testimony "included several inconsistencies as well as portions of testimony that seem improbable" (SAP-84):

- He was able to establish that Mr. Morales had made inconsistent statements about the crucial question of who he'd seen possessing a firearm on October 29th. Initially, Mr. Morales had told an ATF officer—Agent Israel Valle—that he'd seen both Mr. Davila and the driver possessing a firearm (SAP-85). By contrast, at the suppression hearing, Mr. Morales testified that he only saw Mr. Davila with a gun (SAP-85).

- He also established that Mr. Morales's testimony about what items he had recovered from the green bag Mr. Davila had on his person was inconsistent and thus "not credible" (SAP-85).

- And the magistrate also found that Mr. Morales testimony that Mr. Davila started walking after he dropped his gun and the blue bag was improbable (SAP-85).

By far the strongest argument for disbelieving Mr. Morales, however, was the existence of administrative findings that he had lied under oath during an administrative investigation by the police department for which he worked (*see* SAP-226 (administrative by Bayamon Municipal Police that "without any doubt whatsoever" Mr. Morales "lied during the investigation.")). As Mr. Davila pointed out to the suppression court, "nothing could be more probative of a witness's character for untruthfulness than evidence that the witness had previously lied under oath" (SAP-200 (quoting *U.S. v. Whitmore*, 359 F.3d 609, 619-20 (D.C. Cir. 2004)).

In urging the magistrate to consider these administrative findings in assessing Mr. Morales's credibility, Mr. Davila pointed out that "the rules of evidence do not generally apply in suppression hearings, and that [their] inapplicability would support the introduction of evidence that is clearly relevant" (SAP-195 (citing *U.S. v. Feliz*, 794 F.3d 123, 133

(1st Cir. 2015)). He thus argued that "[a]t this stage of the proceedings, Mr. Davila should be allowed to undermine Mr. Morales-Rivera's credibility regarding facts of consequence and introduce reliable evidence to finalize his impeachment" (SAP-196). He also argued that—even though the rules of evidence do not apply at suppression hearings—rule 201(b)(2) provided further support for the magistrate's considering the administrative finding that Mr. Morales lied under oath (SAP-198).

Without even attempting to apply the applicable standard for admitting and considering evidence at a suppression hearing—that "a judge presiding at a suppression hearing may receive and consider any relevant evidence, including affidavits and unsworn documents that bear indicia of reliability"[5]—the magistrate refused to consider this evidence (SAP-89-94). And it rooted its refusal in the Federal Rules of Evidence, reasoning 1) that under Federal Rule of Evidence 201 "it is not proper for judicial notice to be taken of an adjudicative fact for the truth of the matter asserted" and 2) that because, at the suppression hearing, "Mr. Morales denied"—albeit falsely—that "there was an

---

[5] *U.S. v. Schaefer*, 87 F.3d 562, 570 (1st Cir. 1996).

administrative finding of fact that he had lied," Mr. Davila was barred from "introducing extrinsic evidence to rebut Mr. Morales's testimony" (SAP-91; SAP-93). The magistrate acknowledged that "the rules of evidence do not apply strictly at suppression hearings" (SAP-94). But it nonetheless—inexplicably—held that Mr. Davila "cannot circumvent" those rules to introduce an administrative finding that a former police officer whose credibility was the central issue in Mr. Davila's suppression motion had been found by his police department to have lied under oath (SAP-94).

Having improperly excluded core evidence establishing Mr. Morales's lack of credibility, the magistrate then had no trouble relying on Mr. Morales's testimony to conclude that "Mr. Morales observed Mr. Davila in the Housing Project with a visible firearm in his hand," which—combined with his flight from the police—"supported a finding of reasonable suspicion." It relied on that same testimony to factually support its conclusion that "Mr. Davila's possession of a visible firearm in public provided probable cause for his arrest" (SAP-99). Accordingly, on September 20, 2021, it issued a report and recommendation

recommending that the district court deny Mr. Davila's suppression motion.

Mr. Davila objected to the magistrate's report and recommendation on October 29, 2021. Among other things, Mr. Davila argued that the magistrate reversibly erred in applying the Federal Rules of Evidence to exclude evidence that "the government's sole [eye]witness" had been terminated from the Bayamon police force after having been found to have lied under oath (SAP-270). On May 23, 2022, without undertaking any independent analysis, the district court rejected this argument and fully adopted the magistrate's order denying suppression (App.-512-13).

> **B.** **Mr. Davila's plea negotiations are repeatedly raised on the record, culminating in hearings where the district court directly involves itself in ongoing plea negotiations.**

Meanwhile, Mr. Davila's defense counsel also undertook plea negotiations with the government. The government first put the prospect of plea offers on the record at a status conference on February 7, 2020, where it advised the court that it intended to extend plea offers to Mr. Davila and his co-defendants (ECF 400 at 7).

The issue came up again at a June 23, 2022 pretrial conference, which took place after Mr. Davila's unsuccessful suppression litigation. After Mr. Davila's defense counsel told the trial court that her client "is going to go to trial," the court pressed counsel about whether there was really "[a]bsolutely no opportunity to reach a plea agreement with the Government" (App.-518). And—addressing Mr. Davila's counsel—the court also proposed holding a "*Lafler* hearing" for the purpose of explaining to Mr. Davila "what he is exposed to if he goes to trial" (App.-520). Mr. Davila's counsel agreed that a *Lafler* hearing "would be good" (App.-520). Consequently, after confirming that the government had no objection to its holding the hearing, the court accordingly scheduled one for the next week (App.-520).

### 1. The *Lafler* hearing

A word of context on *Lafler* hearings before describing the one that occurred in Mr. Davila's case: The purpose of a *Lafler* hearing is "to establish a record about whether defense counsel effectively conveyed a plea offer to defendants"—thereby guarding against "late, frivolous, or fabricated claims" by disgruntled defendants that their lawyer failed to relay an advantageous plea offer. *U.S. v. Kearn*, 54 F.4th 1225, 1227 n.2

(10th Cir. 2022) (citing *Missouri v. Frye*, 566 U.S. 134, 146 (2012)).

Because their singular purpose is to forestall possible future grounds for

postconviction relief, these hearings are—as a structural matter—never

in the defendant's interests. Instead, they are a measure that "[t]he

prosecution and the trial courts," not defense counsel, "may adopt . . . to

help ensure against late, frivolous, or fabricated claims after a later,

less advantageous plea offer has been accepted or after a trial leading to

conviction with resulting harsh consequences." *Frye*, 566 U.S. at 146.

What's more, because district courts are explicitly barred from

participating in plea discussions under rule 11(c)(1) of the Federal

Rules of Criminal Procedure, "the inquiry that a court may conduct in a

*Lafler/Frye* hearing is extremely limited." *Pena*, 676 F. Supp. 3d at 981.

To balance rule 11(c)(1)'s prohibition on judicial involvement in plea

negotiations against the interest in judicial economy that *Lafler*

hearings can promote, courts typically limit *Lafler* hearings to a "simple

yes-or-no inquiry into communications [between defense counsel and

their client] that do not involve legal advice." *U.S. v. Begay*, 497 F.

Supp. 3d 1025, 1084 (D.N.M. 2020); *see also Hemphill*, 748 F.3d at 675

(*Lafler* hearing limited to "documenting the plea offer [and] informing [the defendant] of its terms").

The district court's inquiry at Mr. Davila's *Lafler* hearing was not so limited. Instead of limiting itself to confirming that Mr. Davila's defense counsel had communicated the terms of any plea offer to him, and that Mr. Davila was indeed rejecting that offer, the court used the *Lafler* hearing to emphasize the severe consequences that Mr. Davila would face if he went to trial, to expressly compare those consequences to the more lenient consequences that would flow from accepting the government's plea offer, and to affirmatively encourage the parties to continue plea negotiations.

The court applied varying degrees of pressure to Mr. Davila from inception. Thus, at the beginning of the hearing, the court explained that its purpose was not just for "the prosecutor [to] go through what the United States has offered to you if you plead guilty," (App.-530), but that it was also an opportunity to inform Mr. Davila "what you would be exposed to if you go to trial and are found guilty," (App.529-530). It further explained that the purpose of the hearing was—not simply to memorialize that Mr. Davila was rejecting the government's offer—but

to facilitate further negotiations. As the court put it: "[a]fter we finish with this hearing, I will give you . . . more time to speak to your attorney, and you will know what you are exposed to and what the Government is offering you, and then you can make up your mind whether you will go to trial with the risk of being found guilty or accept what the Government is offering in its plea agreement" (App.-530).

After setting these expectations, the court began the hearing. It started by eliciting the statutory penalties Mr. Davila would face if he went to trial: five-years-to-life on the § 924(c) charge in count one (App.-532); zero-to-five-years on the marijuana-trafficking charge in count two (App.-533-34); zero-to-ten years on the § 922(g) charge in count three (App.-535); zero-to-fifteen years on the carjacking charge in count four (App.-536); seven years to life on the § 924(c) charge in count five (App.537-38); zero-to-25 years on the carjacking charge in count six (App.-547-48); zero-to-fifteen years on the carjacking charge in count seven (App.-547); another seven-years-to-life on the § 924(c) charge in count eight (App.-546); and another zero-to-fifteen years on the carjacking charge in count nine (App.-554).

The court interspersed its explanation of the statutory ranges for each crime in Mr. Davila's indictment with a meandering inquiry into the sentencing guidelines ranges he would face if he went to trial. This undertaking was often disjointed and confusing.[6] More problematically, during this portion of the hearing the district court also left Mr. Davila with the impression that he would almost certainly receive an extremely high guidelines sentence if he went to trial.

For example—pausing on what Mr. Davila would face if he was convicted of the § 924(c) charges in counts one and five as well as gun and marijuana-trafficking charges in counts two and three—the court summarized as follows:

> **The Court:** So if he's found guilty of the 924(c), when the weapon is brandished, he faces a minimum amount of 84 months up to life.
>
> **[AUSA] Gottfried:** Yes.

---

[6] *See, e.g.*, App.-533 (Court: "What would be the guideline?" Prosecutor: "That's what I'm talking about, the guideline."), 536 (Court: "wait a minute"), 537 (Court: "Hold on a minute"; "Well, what would—wait a minute"; "I'm sorry"), 542 (Court: "Wait a minute. I'm confused. Which counts would be grouped?"), 545 (Court: "Wait. Wait. Wait"), 21 (Court: "Wait a minute. Wait a minute. . . ." Prosecutor: "I'm sorry. Brandishing. You're right, Your Honor"), 547 (Court: "Hold on."), 552 (Court: "Wait a minute. Wait a minute. I thought 3 was grouped.").

**The Court:** But because it has to be served consecutively, it would have to be served consecutively even to the other [§ 924(c)] firearms count in count 1; right?

**Mr. Gottfried:** Correct.

**The Court:** Which would be 60 months.

**Mr. Gottfried:** Yes.

**The Court:** So it would be at least 144 months.

**Mr. Gottfried:** Yes, Your Honor. At least 12 years.

**The Court:** Plus, it would be—also be consecutive to counts 2 and 3.

**Mr. Gottfried:** Yes.

**The Court:** So if it's also consecutive to Counts 2 and 3, it would be, for Count 2, another—

**Mr. Gottfried:** If we could say 12 months.

**The Court:** I thought you said Count 2 would be . . . zero to two years? Is that what you said?

**Mr. Gottfried:** Yeah. It would be probably zero to 18 months.

**The Court:** *Okay. So for Count 2, it would be 124 [sic[7]] plus 18. It would be 162 months.* And if you add Count 3, depending on what his criminal history category would be, it would be a minimum—well, could be less*, but let's go with the guidelines [of 51-78 months[8]]*—that would be a minimum

---

[7] The court meant to say 144.

[8] The court arrived at this range by creating a composite of the low-end of the guidelines if Mr. Davila was criminal history category IV and the high end if he was category V.

of 213 months—it could be less—or a maximum of 250
months . . . if you are convicted of all five counts.

(App.-538-39 (emphases added)).

It repeated this same basic formulation for other counts as well,

variously (and conflictingly) telling Mr. Davila that if he was convicted

of counts one through five he "could be facing from 276 to 346 months"

(App.-540), or, later, "you could be facing from 221 to 269 months"

(App.-543). And if he was convicted of counts one through five and count

seven he's "facing 228 months or less, or 269 months or more" (App.-

545). And, then again, if convicted of counts one through five, seven,

and eight: "312 months or less up to 353 months" or life (App.-545).

And, yet again, summarizing what would happen if Mr. Davila was also

convicted of count six:

So if he's criminal history category 4, the lesser amount
would be . . . 235 months, plus 60 [for one § 924(c)], plus 84
for another one, plus another 84 . . . would be at least 463
months. . . And if he's criminal history category 5 . . . [it
would be] 555 months.

(App.-551; *see also* App.-556-57 (conducting same analysis if convicted of

all counts and telling Mr. Davila he would be facing "a minimum

sentence by the guidelines of 490 months if you're criminal history

category 4—can be less—or a maximum, if you're criminal history category 5, of 593 months or more, up to life")).

The way the court explained the sentence Mr. Davila faced if he went to trial exerted pressure on him to plead. The court consistently emphasized the guidelines Mr. Davila faced. At times, it affirmatively stated it would impose a guidelines sentence if Mr. Davila went to trial (App.-539 ("[L]et's go with the guidelines.")). And even when it hedged and acknowledged that he could get "less," the court never explained how it was obligated to impose a sentence "no greater than necessary" to accomplish federal sentencing purposes. 18 U.S.C. § 3553(a). The district court—which Mr. Davila knew would sentence him if he was ever found guilty—thus effectively conveyed that, absent something extraordinary, Mr. Davila would get a very high guidelines sentence if he went to trial.

The court intensified its involvement in the parties' plea discussions when it switched its focus from what Mr. Davila would get if he went to trial to what the government was offering as an inducement to plead. First, after eliciting that the government was offering a non-binding agreement on which the parties would jointly recommend a

composite sentence of either 270 or 248 months, the district court undertook to compare the sentence Mr. Davila faced if he went to trial with the sentence he would receive if he pleaded guilty:

> *The Court:* So, Mr. Davila . . . instead of 490 to 593 months, the Government's offer now is anything between 248 and 270 months, depending on your criminal history category.

(App.-564). Comparing the option of pleading to going to trial, the court thus told Mr. Davila that he would affirmatively get "490 to 593 months" if he went to trial, and that he would equally affirmatively receive "between 248 and 270 months" if he pled guilty.

Finally, as the hearing came to a close, the court directly injected itself into plea negotiations by "assum[ing]" that a plea offer was still on the table, getting the government to affirmatively represent that they were open to a counteroffer, and then signaling that the court thought a counteroffer was a good idea by turning to Mr. Davila's defense counsel and making sure he understood that he could counter:

> **The Court:** I assume, [AUSA] Gottfried, that the plea agreement is still in effect?
>
> **Mr. Gottfried:** Yeah. The plea agreement is still in effect. And, again, this offer was made two and a half years ago. I understand that Mr. Davila has not wanted to do a counteroffer, so this is the only offer the Government has made, and we have not received any response from Mr. Davila that he wants another offer.

22

**The Court:** Would you receive another offer, or is this your final offer?

**Mr. Gottfried:** We would be open to a counteroffer.

**The Court:** Okay. [Defense counsel] Mora, did you understand that?

**Mr. Mora-Rolland:** Yes, Your Honor.

(App.-562).

The court then gave the parties 30 days to advise whether a plea agreement would be forthcoming and terminated the hearing (App.-565).

### 2. The subsequent pretrial hearings

Two more hearings occurred before Mr. Davila finally entered a guilty plea. At the one set 30 days from the *Lafler* hearing, the parties advised the court that they had not reached a plea agreement and asked the court to set the matter for trial—as well as what they expected to be a final pretrial status conference to be held on October 6, 2022 (App.-579-81).

At the October 6 conference, the court proposed a trial date of October 31, 2022 (App.-587). Because lead defense counsel was set for a separate trial then, he asked for a different date (App.-587-88). The court pushed back, explaining that it had no other trial availability

until April, and indicating that it would set trial for October 31 over defense counsel's objection (App.-589).

The defense then requested a sidebar, where it explained why the complexities of Mr. Davila's case meant that it "need[ed] . . . two defense attorneys" and that scheduling it for trial on October 31, when one of his two lawyers would be unavailable, would work a miscarriage of justice (App.-589). After further haggling, the court eventually agreed to set the case for mid-April, and expressed its intention to make a clear record that the continuance was at the defense's request (App.-590).

The court then ended the sidebar and resumed open court proceedings where it summarized its decision as follows: "Based on the Defense request, not opposed by the Government, the trial is set for April 17, 9:00. *That [delay] will give you a chance to twist your client's arm*" (App.-590).

The next hearing in Mr. Davila's case was his change-of-plea hearing.

### III. Following the "twist your client's arm" hearing, Mr. Davila reluctantly signs a plea agreement and pleads guilty.

On April 4, 2023, Mr. Davila's defense counsel requested a change of plea hearing on the basis that the parties had reached a plea agreement (App.-50 (ECF 358)). Under the plea agreement's terms, Mr. Davila agreed to plea guilty to three counts of the operative indictment (with the government's dismissing the remaining counts):

- count one, which charged possession of a firearm in furtherance of drug trafficking;
- count two, which charged possession with intent to distribute controlled substances; and
- count three, which charged felon-in-possession.

(App.-593-94, 602).

The parties further agreed to jointly recommend a composite sentence of 15 years for these three counts, plus a consecutive 3-year sentence in Mr. Davila's pending supervised-release-revocation proceeding in case number 09-cr-173 (App.-599).

With respect to Mr. Davila's appellate rights, the plea agreement contained the following appeal waiver provision:

> Defendant knowingly and voluntarily agrees that, if the sentence imposed by the Court is at or below a total of 15 years imprisonment for 19-cr-716 (regardless of the sentence in 09-cr-173), Defendant waives the right to appeal any

aspect of this case's judgment and sentence, including, but not limited to the terms of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

(App.-599).

The change-of-plea hearing took place on August 13, 2023—the Thursday before the Monday on which trial was to start. Right after the magistrate called the case, Mr. Davila's counsel announced that "we cannot go forward with the change of plea hearing" (App.-611). After confirming that the start of trial was just a couple of days away, the magistrate proceeded to undertake his own—more truncated—version of a *Lafler* hearing, at which the government explained that it had extended a "highly unusual" plea offer to Mr. Davila that contained a "global resolution" of both the new charges and the pending revocation petition "that was significantly lower than what Mr. Davila would face if he were convicted on the counts at trial" (App.-612-14). The government further stated that—if Mr. Davila were convicted after trial—he "is facing over thirty years in prison" and a "maximum . . . potential sentence of life imprisonment" (App.-613-14). (The government misstated the applicable mandatory minimum after conviction at trial as 21 years, when it was in fact 19 years, but that

misstatement was eventually corrected on the record. (*compare* App.-613, *with* App.-616).)

Summarizing the state of play, the magistrate turned to Mr. Davila and explained to him that if he pled guilty he faced a recommended composite sentence of 18 years in prison, whereas if he went to trial he would be facing "nineteen years plus whatever sentences [you] get for the marijuana count, which is I think the legal maximum of five years and carjacking counts which are whatever is the maximum of twenty years" (App.-616-17). The government added that Mr. Davila would also be facing a maximum of ten years on a § 922(g)(1) count, and the court followed this up by observing that "each of these [§ 924(c)] firearm counts we've been taking about . . . has a maximum of life imprisonment" (App.-617).

The court then asked Mr. Davila if he wanted to plead guilty or go to trial. After taking a recess, Mr. Davila elected to change his plea to guilty (App.-618). The magistrate accordingly proceeded to the rule 11 change-of-plea colloquy.

When he arrived at the portion of that colloquy governed by rule 11(b)(1)(M)—which requires the court to give the defendant advice

about how federal sentencing works—the magistrate failed to follow
that rule. He did not tell Mr. Davila that the court was required to
consider possible departures from the Sentencing Guidelines in crafting
a sentence (*cf.* App-628-29). He did not describe all of the § 3553(a)
factors that the sentencing court had to consider (*id.*). And—
compounding the district court's failure, at the *Lafler* hearing, to
explain the overarching standards of federal sentencing—he did not
explain that the sentencing guidelines were but one factor that the
court had to consider as part of its overarching responsibility to impose
a sentence "no greater than necessary" to accomplish § 3553(a)'s
purposes (*id.*).

After listening to these partial advisements, Mr. Davila ultimately
pleaded guilty under the terms of the plea agreement (App.-638).

## IV. Mr. Davila continues to express his desire to go to trial presentence and the PSR reveals that he has cognitive impairments making him particularly vulnerable to pressure and influence.

In the aftermath of Mr. Davila's guilty plea, U.S. Probation set
about preparing a presentence investigation report (PSR) in
anticipation of his sentencing. Before Probation could interview Mr.
Davila, however, his appointed counsel filed a motion to withdraw,

explaining that "[f]ollowing the change of plea hearing, Mr. Davila has engaged in a crusade to claim that he was coerced and pressured to plead guilty," resulting in a complete breakdown in the attorney-client relationship (SAP-129). Counsel accordingly sought to withdraw based on that breakdown and because Mr. Davila's claim "that he was forced by his counsel to plead guilty . . . has created a conflict preventing the FPDO from continuing to represent him." (*Id.*) The court granted this motion to withdraw and appointed substitute counsel to represent Mr. Davila (App.-370).

Meanwhile, U.S. Probation disclosed a draft PSR on June 12, 2023—before it had an opportunity to interview Mr. Davila. The draft PSR calculated that Mr. Davila faced a guideline sentence of no less than 60 months on count one—the § 924(c) count (SAP-153 ¶ 121). It further calculated that Mr. Davila faced a base offense level of 22 for counts two and three, but that his total offense level for these counts was 19 because he was entitled to a three-level offense-level reduction for pleading guilty and accepting responsibility (*see* SAP-142-43, 153 ¶¶ 65, 72-73, 121).

The draft PSR also contained background about Mr. Davila's family history, which documented Mr. Davila's extensive history of physical, mental, and sexual abuse; his tumultuous path through the foster care system; and the existence of a neuropsychological evaluation finding that Mr. Davila had "severe cognitive limitations" that "may hinder his ability to follow and understand the complex legal proceedings against him and assist his lawyer in his defense" (SAP 151 ¶ 106). This evaluation diagnosed Mr. Davila with "a borderline to low average mental capacity and limitations in adaptive functioning," which collectively "render him highly susceptible to being manipulated and pressured into behaviors without his full ability to understand the consequences of his actions" (*id.*).

On July 31, 2023, a U.S. Probation Officer interviewed Mr. Davila in advance of preparing a final PSR. This interview added some details, such as more specific dates, to the final PSR's description of Mr. Davila's upbringing. But it also resulted in Mr. Davila's losing his acceptance-of-responsibility points because, as the final PSR put it, during the July 31 PSR interview Mr. Davila "denied having committed the instant offense and expressed his discomfort in having signed the

plea agreement in which he will potentially serve 18 years in prison. [Mr. Davila] declared that the offense for which he is accused of having committed [sic] has been made up" (SAP-172 ¶ 61). In terms of Mr. Davila's guidelines range, the final PSR accordingly concluded that Mr. Davila faced a guidelines-recommended sentence of 77 months to 96 months on counts two and three (based on a total offense level of, not 19, but 22, and a criminal history category of V) plus a mandatory consecutive sentence of 60 months on count one, for a total advisory guidelines range of 137-156 months (SAP-185 ¶ 128).

## V. Sentencing

Sentencing on both this case and the companion revocation proceeding took place on September 15, 2023 (App.-641). At the outset of the sentencing hearing, Mr. Davila's new counsel reported that Mr. Davila had felt coerced into pleading guilty and asked the district court to allow him to withdraw his guilty plea (App.-642-43). When the court refused, she then urged the court to follow the parties' recommendation and sentence Mr. Davila to a composite sentence of 15 years on his substantive criminal case followed by three years, consecutive, on his revocation case, for a total sentence of 18 years (App.-645).

The government then argued for the same sentence. Acknowledging that the sentence represented an upward variance from the applicable guidelines range, it told the court that "there are many reasons that justify the upward variance" including the fact that the government had dismissed "around four carjackings and accompanying 924(c)'s," the fact that Mr. Davila had a lengthy criminal history, and Mr. Davila's "lack of any stable employment history" (App.-646-47).

The court next turned to Mr. Davila and invited him to allocute. In response, Mr. Davila again gave voice to his desire to go to trial, saying that "I've always wanted to go to trial in this case" and again asking the court to give him the opportunity to withdraw his guilty plea, explaining that "the reason . . . I'm asking to withdraw this plea is that I didn't do what I'm being accused of" (App.-648-49).

The court denied Mr. Davila's request to withdraw his guilty plea. It then followed the parties' recommendation and sentenced Mr. Davila to 15 years in prison on the substantive criminal case (followed up by 3 years consecutive in the revocation case), with five years of supervised release to follow (App.-652-53). While the court did orally pronounce some of the nonmandatory terms of Mr. Davila's supervised release, it

did not orally pronounce any of the *standard* nonmandatory terms, nor did it adopt them by reference. They appeared instead, for the first time, in the written judgment (Add.-7).

This appeal now follows.

## ARGUMENT SUMMARY

*First*, the Court should reverse Mr. Davila's conviction—notwithstanding the appeal waiver—because he pleaded guilty only after he endured improper judicial pressure. The *Lafler* hearing in this case vastly exceeded the permissible scope and purpose of such hearings, which is properly limited to "simple yes-or-no" questions designed to determine whether defense counsel conveyed the government's offer to their client. At the *Lafler* hearing in this case, by contrast, the district court explicitly applied pressure by telling Mr. Davila, bluntly, that he was facing a sentence of 490 to 593 months if he went to trial, but only 248 to 270 months if he pled guilty. It applied a more subtle, implicit form of pressure by undertaking (without any legitimate legal basis to do so) a minute and necessarily speculative on-the-record calculation of Mr. Davila's guidelines range, repeatedly telling him that he would be facing extremely high guidelines if he went

to trial (which would necessarily have to run consecutive to his § 924(c) convictions), but then failing to fully explain the full picture of how federal sentencing works: that it is overarchingly guided by the parsimony principle of 18 U.S.C. § 3553(a), that the guidelines are not presumed reasonable and courts must vary downward from them if a lower sentence would suffice to accomplish the goals of federal sentencing, and that courts are expressly empowered to take into account § 924(c)'s mandatory minimums in deciding whether to vary downward from the otherwise applicable non-§924(c) guidelines range. And it compounded this pressure by telling Mr. Davila's lawyer—at the pretrial conference immediately before Mr. Davila pleaded guilty—that the lengthy continuance it was granting at defense counsel's behest would enable counsel to "twist [Mr. Davila's] arm" into pleading guilty. Mr. Davila has limited cognitive functioning and is easily susceptible to pressure. Because his decision to plead guilty under a plea agreement was the product of improper judicial pressure, this Court must not apply the appeal-waiver provision in Mr. Davila's plea agreement and it must vacate Mr. Davila's convictions and remand for trial.

***Second***, assuming the Court agrees that Mr. Davila's appeal-waiver is invalid and his convictions must be vacated, the Court should also reverse the district court's denial of Mr. Davila's motion to suppress the fruits of his illegal arrest. The core factual contention in Mr. Davila's motion to suppress was that the district court should disbelieve the arresting officer when he testified that he saw Mr. Davila holding a gun. Absent evidence that the officer saw Mr. Davila with a gun, Mr. Davila argued, the stop lacked reasonable suspicion and the arrest lacked probable cause. Despite the centrality of the arresting officer's credibility to Mr. Davila's suppression motion, the district court refused to even consider highly relevant evidence that that officer had lied under oath, inexplicably and erroneously holding that the federal rules of evidence—which do not apply at suppression hearings—prohibited Mr. Davila from introducing that evidence. This too was error—and should be reversed.

***Finally***, even if the court enforces Mr. Davila's appeal waiver, it must still reverse for resentencing because the district court failed to orally pronounce or adopt by reference the nonmandatory standard conditions of supervised release that the written judgment imposed.

## STANDARDS OF REVIEW

***Rule 11 violations.*** If preserved, Mr. Davila's argument rule 11 arguments are reviewed de novo. *See U.S. v. Collins*, 684 F.3d 873, 882 (9th Cir. 2012). If unpreserved, they are reviewed for plain error. *See U.S. v. Davila*, 133 S. Ct. 2139, 2147 (2013). To the extent either rule 11 violation is unpreserved, however, whether each meets the "error" prong of plain-error review should still be reviewed de novo because both involve the "purely legal issue" of whether the court's conduct violated the rules. *U.S. v. Platte*, 577 F.3d 387, 391 (1st Cir. 2009); *see Demoski v. State*, 2024 Alas. App. LEXIS 40, *10 (Alaska App. 2024) (Mannheimer, J., concurring) ("'Plain error' . . . does not define the degree of deference that an appellate court must extend to a decision of a lower court").

***Suppression evidentiary issue.*** Mr. Davila's preserved challenge to the district court's refusal to admit evidence that the officer who arrested Mr. Davila previously lied under oath is reviewed for abuse of discretion. *U.S. v. Irizarry-Sisco*, 87 F.4th 38, 44 (1st Cir. 2023). That said, whether the court abused its discretion because—as here—it misunderstood applicable evidence law is a legal issue that is

reviewed de novo. *See Scholz v. Goudreau*, 901 F.3d 37, 51 (1st Cir. 2018) ("We review a district court's evidentiary rulings for abuse of discretion, but review legal issues within those evidentiary rulings de novo[.]" (citations omitted)).

**Sentencing error.** Mr. Davila's argument that the district court imposed nonmandatory supervised-release conditions without orally pronouncing or referring to them is reviewed for harmless error, with the government bearing the burden to prove harmlessness beyond a reasonable doubt. *U.S. v. Sepulveda-Contreras*, 466 F.3d 166, 170 (1st Cir. 2006).

## ARGUMENT

### I. The lower courts violated rule 11 of the Federal Rules of Criminal Procedure and improperly pressured Mr. Davila to plead guilty, invalidating his plea and appeal waiver.

#### A. Rule 11(c)(1) categorically bars judicial participation in plea negotiations.

Rule 11(c)(1) of the Federal Rules of Criminal Procedure categorically prohibits judicial participation in plea discussions. Fed. R. Crim. P. 11(c)(1). This prohibition is grounded in the recognition that judicial participation in plea negotiations is "inherently coercive." *U.S. v. Cano-Varela*, 497 F.3d 1122, 1134 (10th Cir. 2007). As the Advisory

Committee observed when it introduced Rule 11(c)(1)'s predecessor: "The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness." Fed. R. Crim. P. 11 advisory committee's 1974 note. The Committee explained that "[w]hen a judge becomes a participant in plea bargaining he brings the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not." *Id.* Rule 11(c)(1) exists to protect defendants against this awesome power and—thereby—to protect "the integrity of the judicial process" and preserve "the judge's impartiality after the negotiations are completed." *U.S. v. Kyle*, 734 F.3d 956, 963 (9th Cir. 2013). It sets forth an "unambiguous mandate"—a "rule that . . . admits of no exceptions"—that "prohibits the participation of the judge in plea negotiations under *any* circumstances." *U.S. v. Bruce*, 976 F.2d 552, 558 (9th Cir. 1992) (emphasis in original)). This rule applies regardless of how "well-intentioned" the court's involvement in negotiations might have been. *U.S v. Casallas*, 59 F.3d 1173, 1178 (11th Cir. 1995). And it applies with great force: courts do not "hesitate[] to find a Rule 11 error

even when the court's participation is minor and unintentional." *U.S. v. DeLeon*, 915 F.3d 386, 390 (5th Cir. 2019) (citation omitted)).

It is especially problematic when judges involve themselves in plea negotiations before the parties have actually reached an agreement. "[T]he interests of justice are best served if the judge remains aloof from all discussions preliminary to the determination of guilt." *U.S. v. Beird*, 217 F.3d 15, 20 (1st Cir. 2000) (citation omitted). Thus, "[b]efore the parties have concluded a plea agreement and have disclosed the final agreement in open court, the judge must refrain from *all forms* of plea discussions." *Bruce*, 976 F.2d at 555 (emphasis in original). While the district court may properly "evaluate a plea agreement once it has been reached by the parties and disclosed in open court. . . . [p]rior to that time, a court should not offer comments touching upon proposed or possible plea agreements. . . .". *U.S. v. Cone*, 323 F. App'x 865, 870 (11th Cir. 2009) (quoting *U.S. v. Diaz*, 138 F.3d 1359, 1363 (11th Cir. 1998)); *see Hemphill*, 748 F.3d at 673 (noting that "*after* a defendant has agreed to accept a plea offer, the district court is expected to take an active role [in evaluating a plea agreement]" but that judicial comments "made before [a defendant] ha[s] accepted any

plea" will "tend[] to pressure [the defendant] into accepting an offer that the court preferred"). The risk of pressuring a defendant to plead guilty is simply too great.

### B. The district court violated rule 11(c)(1)'s prohibition on judicial involvement in plea negotiations.

Here, the district court improperly injected itself into Mr. Davila's plea negotiations well before any agreement before the parties had been reached. The court did this by convening a hearing—before the close of plea negotiations—to review the terms of the government's offer and describe to Mr. Davila the consequences of going to trial (App.-530).

The court's comments violated rule 11(c)(1), and applied pressure to Mr. Davila to plead guilty, in multiple respects. ***First***, the court violated rule 11(c)(1) and applied pressure to Mr. Davila by telling him that he would receive a significantly higher sentence if he went to trial than if he pleaded guilty. Summarizing the stakes for Mr. Davila, the court told him that "the Government's offer now is anything between 248 and 270 months, depending on your criminal history category . . . instead of 490 to 593 months" if he went to trial (App.-564). This came on the heels of the court's numerous other comments implying or

stating that it would impose a guidelines sentence on Mr. Davila if he went to trial (*see, e.g.*, App.-538-39, 540, 543, 545).

Collectively, these comments left Mr. Davila with the impression that, if he exercised his trial right, he would be convicted and receive a sentence almost double the government's plea offer—and well in excess of the applicable mandatory minimum. That was a blatant violation of rule 11(c)(1). *See Bruce*, 976 F.2d at 558 (there is "no doubt . . . that the . . . judge should take no part *whatever* in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty . . . or submission to him of a plea agreement" (quoting *U.S. v. Werker*, 535 F.2d 198, 201 (2d Cir. 1976)). And it constitutes implicit judicial pressure to plead guilty. *See Casallas*, 59 F.3d at 1177-1178 (even if it is an "accurate assessment of the guideline[s] . . . "implicitly contrasting" sentence defendant would receive after trial with sentence he'd receive after a guilty plea is coercive); *see also U.S. v. Rodriguez*, 197 F.3d 156, 159 n.5 (5th Cir. 1999) (district court's comment that defendant was facing "five years minimum" if he pleaded guilty but "ten years minimum" if he went to

trial indicated belief that defendant would be found guilty at trial and constituted improper participation in plea negotiations).

*Second*, the court violated rule 11(c)(1) and applied pressure to Mr. Davila by ensuring that the government's plea offer remained open and by affirmatively encouraging negotiations between Mr. Davila and the government (*See* App.-562 (excerpted, *infra*, pp. 22-23)). This exchange was improper. It is improper for a district court to make any on the record "assum[ption]" about whether a plea offer is still outstanding and to ask the government if it would "receive another offer," a question that is nothing more than the court's injecting itself into the plea negotiation process. *See U.S. v. Harrell*, 751 F.3d 1235, 1239 (11th Cir. 2014) (error for district court to "instigate . . . plea-related discussions"). And it is especially improper, and harmful, for the court to follow-up an inquiry about whether the government is open to a counteroffer by turning to defense counsel and saying "did you understand that?"—a question that, coming on the heels of a discussion of the comparative penalties a defendant faces if he goes to trial versus pleading guilty, amounts to clear encouragement to resolve the case.

***Third***, throughout the *Lafler* hearing, the court maintained a deep and intricate focus on Mr. Davila's posttrial sentencing guidelines range and on how the multiple § 924(c)'s Mr. Davila faced would stack to create mandatory minimums that would then, in turn, stack on top of the guidelines sentences Mr. Davila would face for his non-924(c) convictions (App.-532, 534, 538, 543, 544, 545, 546). But it coupled this focus with a total disregard of the other, countervailing, principles of federal sentencing. The court never told Mr. Davila that 18 U.S.C. § 3553(a) requires parsimonious sentencing—requires that a court impose a sentence "no greater than necessary" to satisfy the § 3553(a) factors. It never told Mr. Davila that the sentencing guidelines range is not presumed reasonable. *Cf. Nelson v. U.S.*, 555 U.S. 350, 352 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."). Nor did it tell Mr. Davila that it could factor in the § 924(c)s to reduce any sentence he received on a non-924(c) count to reach an overall parsimonious sentence. *Cf. Dean*, 581 U.S. at 67.

***Finally***, looking beyond the *Lafler* hearing, the court violated rule 11(c)(1) when, at the October 6, 2022 pretrial conference, it told defense

counsel that the lengthy continuance it was granting would enable her to "twist [her] client's arm]" into pleading guilty (App.-590). Even though Mr. Davila was not present at this pretrial conference, this comment, too, constituted improper judicial pressure to plead. *See U.S. v. Paul*, 634 F.3d 668, 672 (2d Cir. 2011) (evaluating comments court made outside defendant's presence to determine if rule 11(c)(1) violation occurred).

That the district court made many of these comments at a *Lafler* hearing does not change the fact that they improperly pressured Mr. Davila to plead guilty. *Frye* and *Lafler* "concern the duty of *defense counsel* to advise their clients regarding formal plea offers." *U.S. v. Braxton*, 784 F.3d 240, 247 (4th Cir. 2015). While *Frye* acknowledges "[t]he prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims" concerning defense counsel's failure to communicate a formal plea offer, in the pretrial context it simply allows for "formal offers [to] be made part of the record at any subsequent plea proceeding or before trial on the merits." *Frye*, 566 U.S. at 146. A district court accordingly "fulfill[s] its role under *Frye* by memorializing [any plea] offer on the record at the government's

request. . . ." *Braxton*, 784 F.3d at 247. "Nothing more [is] required or justified by *Frye*." *Id.*

Here, the district court went well beyond these limits. Instead of holding the *Lafler* hearing at the government's request—to memorialize a rejected plea offer and thereby forestall a future claim of ineffective assistance of counsel—the district court invited *defense counsel* to request the *Lafler* hearing (App.-520). And instead of limiting its *Lafler* inquiry to the bare minimum necessary to memorialize that the government had made a plea offer, that defense counsel had communicated the terms of that offer to Mr. Davila, and that Mr. Davila had rejected it, the district court undertook a lengthy hearing that emphasized, in minute yet also misleading detail, the sentencing benefits of pleading guilty versus going to trial. The record leaves no doubt that this entire course of proceedings was motivated less legitimate *Lafler* purposes than by a desire to persuade Mr. Davila to plead guilty.

That is error. And it is error irrespective of how well-intentioned this intervention was. "Although it is clear that the district court judge here was primarily motivated by the concern that appellant be

thoroughly apprised of the situation that he faced, [former] Rule 11(e)"—now rule 11(c)(1)—"requires that this concern, however well-intentioned, be addressed by someone other than the judge before whom the defendant is to plead guilty and be sentenced." *Casallas*, 59 F.3d at 1177-78.

We can grant that the court was attempting to reach a fair and equitable outcome for Mr. Davila in this case when it traduced the limits of rule 11. But that is precisely the problem. Simply put, "[t]he facts of this case represent an archetypical example of the dangerous and slippery slope faced by judges and defense counsel when they choose to ignore bright-line procedural safeguards in pursuit of what they surmise is the most just, equitable, or efficacious outcome in a particular case." *U.S. v. Ushery*, 785 F.3d 210, 225 (6th Cir. 2015) (Clay, C.J., dissenting). The result, in this case, was that what the PSR recognized to be a cognitively compromised and highly suggestible defendant—who repeatedly evinced his desire to go to trial—was pressured into pleading guilty and accepting an 18-year federal prison sentence (*see* SAP-182 ¶ 110). This outcome requires vacatur of Mr. Davila's guilty plea.

**C.** **The magistrate violated rule 11(b)(1)(M) by failing to properly advise Mr. Davila about pertinent aspects of federal sentencing law at his change of plea hearing.**

In addition to the district court's rule 11(c)(1) violations, the magistrate court also violated rule 11(b)(1)(M) at Mr. Davila's change of plea hearing. Rule 11(b)(1)(M) requires that, before a court may accepted a guilty plea, it must

> inform the defendant of, and determine that the defendant understands . . . the court's obligation [at sentencing] to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

Fed. R. Crim. P. 11(b)(1)(M).

This rule "does not mandate a talismanic statement, in formulaic language, as to the advisory nature of the sentencing guidelines." *U.S. v. Chambers*, 710 F.3d 23, 28 (1st Cir. 2013). But it "does require the court to put the guidelines in meaningful perspective." *Id.*

The court did not do that here. To supply a "meaningful perspective" on the federal sentencing guidelines, a court must, at minimum, convey to the defendant that the sentencing guidelines are merely advisory, that the guidelines range is not a presumptively reasonable range, *Rita v. U.S.*, 551 U.S. 338 (2007), that the guidelines

are just one factor among the many others that the sentencing court must consider in settling on a sentence, *see Kimbrough v. U.S.*, 552 U.S. 85, 90 (2007) (guidelines "now serve as one factor among several"), and that the overarching mandate of federal sentencing is for the court to arrive at a sentence sufficient but not greater than necessary to achieve the objectives described in 18 U.S.C. § 3553(a). *See U.S. v. Texeira-Nieves*, 23 F.4th 48, 56 (1st Cir. 2022) (section 3553(a)'s "overarching principle directs courts to ensure that a sentence is 'sufficient, but not greater than necessary'").

The court's comments at Mr. Davila's change of plea hearing were a far cry from these minimal advisements. With respect to the sentencing guidelines, the court said only that "[i]n deciding your sentence, the District Judge is required to consider but not necessarily follow what we call the sentencing guidelines" (App.-628). This explanation failed to satisfy any of the express elements of rule 11(b)(1)(M): it failed to tell Mr. Davila that the district court was obligated to calculate a guidelines range and it equally failed to tell him that the court was required to consider departures from that range. *Cf.* Fed. R. Crim. P. 11(b)(1)(M). More fundamentally, this explanation also

failed to supply "meaningful perspective" on the advisory nature of the sentencing guidelines. *Chambers*, 710 F.3d at 28. Instead of conveying that the guidelines are merely advisory, the court's comment that the sentencing judge need not "necessarily follow" the guidelines suggested that guidelines are presumptively reasonable and appropriately anchor any sentence imposed.

The court's remaining sentencing comments failed to remedy these critical rule 11(b)(1)(M) deficiencies. After offering its deficient description of the sentencing guidelines, the court went on to tell Mr. Davila that the sentencing court

> will also consider certain statutory sentencing factors and these factors include the seriousness of the offense, the need for deterrence of criminal conduct, the need to protect the public from further crimes, the need to provide the defendant with needed educational or vocational training or medical care and the need to provide restitution to any victims.

(App.-629). Just like the court's remarks about the guidelines, these comments expressly flunked rule 11(b)(1)(M). Rule 11(b)(1)(M) requires the court to tell a defendant about the court's obligation, at sentencing, to consider the "sentencing factors under 18 U.S.C. § 3553(a)." Here, the court mentioned a few of those factors (the seriousness of the offense,

deterrence, public protection, rehabilitation, and restitution). But it did not mention others. *See* 18 U.S.C. § 3553(a)(1) ("the history and characteristics of the defendant"); *id.* § 3553(a)(2)(A) ("promote respect for the law" and "provide just punishment); *id.* § 3553(a)(3) ("kinds of sentences available"); *id.* § 3553(a)(6) ("the need to avoid unwarranted sentence disparities").

And, again, the more fundamental problem is that the district court never placed these factors in "meaningful perspective" because it never described § 3553(a)'s standard—its overarching requirement that the court impose a "sufficient, but not greater than necessary" sentence. Without that crucial context—without understanding how the court is to apply or think about the § 3553(a) factors—a mere recitation of some of those § 3553(a) factors provides no meaningful insight into how sentencing is supposed to work.

The change of plea colloquy violated rule 11(b)(1)(M).

## D. The rule 11 errors were preserved, and the government cannot show they were harmless.

Before he was sentenced, Mr. Davila moved to withdraw his guilty plea. Because of this, the Court should find that the rule 11 errors in this case are preserved and should accordingly evaluate whether the

government can establish harmless error. *See U.S. v. Ortiz-Garcia*, 665 F.3d 279, 285 (1st Cir. 2011) (plain error review applies only where a defendant "failed to object to the error *or move to withdraw his plea in the district court*" (emphasis added)); *see also U.S. v. Sevilla-Oyola*, 770 F.3d 1, 23 (1st Cir. 2014) (in rule 11 context "burden of proving that an error was harmless is on the government"). Alternatively, given the pressure Mr. Davila was under to plead, this case presents "extraordinary circumstances" that "should allow [Mr. Davila's] claim to be judged under the harmless error standard." *Davila*, 133 S. Ct. at 2150.

Either way, the government can establish harmless error only if it can show, based on the whole record, that the district court's "flawed compliance with Rule 11 [cannot] reasonably be viewed as having been a material factor affecting the defendant's decision to plead guilty." *U.S. v. Daigle*, 63 F.3d 346, 349 (5th Cir. 1995); *see U.S. v. Dominguez-Benitez*, 542 U.S. 74, 80 (2004) ("in assessing the effect of Rule 11 error, a reviewing court must look to the entire record, not to the plea proceedings alone.").

Reviewing the whole record in this case, the government cannot establish harmless error. The whole record in this case establishes that Mr. Davila repeatedly expressed his desire to go to trial. His trial counsel told the district court the case was heading to trial on numerous occasions (App.-518, App.-580). Mr. Davila only changed his plea after enduring significant judicial pressure to plead guilty and after the trial court failed to advise him of critical information about how federal sentences are calculated that might have undercut the pressure to which he had been subjected. And after he changed his plea, Mr. Davila continued to assert his innocence, losing levels off for acceptance of responsibility by denying his guilt during his PSR interview and asking the court, at sentencing, to withdraw his guilty plea (SAP-172 ¶ 61; App.-644, 649).

What's more, the record reflects that Mr. Davila was uniquely susceptible to the pressure to plead guilty that was applied throughout this case. As the PSR explains, Mr. Davila suffers from "severe cognitive limitations" that "may hinder his ability to follow and understand the complex legal proceedings against him" (SAP 181 ¶ 106). To be more precise, his "borderline to low average mental

capacity and limitations in adaptive functioning . . . render him highly susceptible to being manipulated and pressured into behaviors without his full ability to understand the consequences of his actions" (*id.*). Surveying the record as a whole, the government simply cannot show that the rule 11 violations in this case were harmless.

### E. Even if unpreserved, the rule 11 errors were plain.

Even if the Court disagrees that Mr. Davila preserved the rule 11 errors in this case, it should still reverse because those errors were plain. To establish plain error, Mr. Davila "must show that: (1) an error occurred; (2) the error was plain; (3) the error affected [his] substantial rights; and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Ortiz-Garcia*, 665 F.3d at 285 . Because rule 11(c)(1) "establishes such a bright-line rule," it follows that "a finding of judicial misconduct in connection with a plea proceeding constitutes plain error and entitles a defendant to withdraw his guilty plea even if the error is identified for the first time on appeal." *Collins*, 684 F.3d at 883 (citation omitted).

Mr. Davila establishes plain error. ***First***, the court's violations of rule 11(c)(1) and rule 11(b)(1)(M) were "both obvious and plain." *U.S. v.*

*Borrero Acevedo*, 533 F.3d 11, 17 (1st Cir. 2008). Rule 11(c)(1) could not be clearer: "The court must not participate in [plea] discussions." That proscription plainly was not followed here. It is plainly improper for a district court to note that a lengthy continuance will enable defense counsel to "twist [their] client's arm" to plead guilty (App.-590). It is plainly improper for a district court to intervene in plea discussions and compare the sentence a defendant would receive if they went to trial with the sentence they would receive if they pleaded guilty (App.-564). And it is plainly improper for a district court to directly ask the government to state on the record that it is open to a counteroffer from the defendant, and then to signal its desire that plea negotiations continue by immediately turning to defense counsel and saying "did you understand that?" (App.-562).

The trial court's violations of rule 11(b)(1)(M) were equally plain; it never mentioned sentencing guidelines departures, it never mentioned a number of the § 3553(a) factors, and—by failing to state any of the key sentencing standards—its partial recitation of some of the factors a judge must think about in imposing sentence failed to

provide the "meaningful perspective" on federal sentencing that rule 11(b)(1)(M) requires judges to supply. *Chambers*, 710 F.3d at 28.

**Second**, the trial court's errors affected Mr. Davila's substantial rights. To establish this plain-error prong, Mr. Davila must show "a reasonable probability that, but for the [rule 11] error[s], he would not have entered the plea." *Davila*, 133 S. Ct. at 2147. This standard does not even require Mr. Davila to show by a preponderance of the evidence that he would have gone to trial but for the rule 11 violations. *See, e.g.*, *Rosin v. U.S.*, 522 F. App'x 578, 579 (11th Cir. 2013) ("reasonable probability" standard "is less than proof by a preponderance of the evidence"). Instead, it requires only "that the likelihood of a different result is great enough to undermine confidence in the outcome." *Smith v. Cain*, 132 S. Ct. 627, 630 (2012).

"[I]t will be rare that a clear violation of Rule 11's prohibition against judicial involvement in plea negotiations does not affect substantial rights." *U.S. v. Bradley*, 455 F.3d 453, 463 (9th Cir. 2006). This is not one of those rare cases. Instead, the same considerations that preclude the government from establishing harmless error also establish a reasonable probability that, but for the rule 11 errors, Mr.

Davila would not have pleaded guilty. Mr. Davila clearly and repeatedly expressed his desire to go to trial, and he only elected to change his plea to guilty after enduring the rule 11 violations and associated judicial pressure to plead. In this regard, it is telling that it was Mr. Davila's own defense counsel who requested the *Lafler* hearing. The only possible explanation why defense counsel would request such a hearing is because she believed it would help induce her client—whose cognitive impairments made him particularly susceptible to pressure—to plead.

***Finally***, the fourth prong of the plain-error standard is satisfied because the fairness, integrity, and public reputation of judicial proceedings are affected by the rule 11 violations in this case. Rule 11's prohibition on judicial involvement in plea negotiations "protects the integrity of the judicial process," *Bruce*, 976 F.2d at 555, because a judge's participation in plea negotiations is "inconsistent with the court's role as a neutral arbiter of justice," *Kyle*, 734 F.3d at 966. Because of this, courts have observed that failing to correct "clear Rule 11 error" will "almost inevitably seriously affect the fairness and integrity of judicial proceedings." *U.S. v. Bradley*, 455 F.3d 453, 463 (4th Cir. 2006). Mr. Davila satisfies this prong of plain error as well.

**F.    The rule 11 errors in this case invalidate Mr. Davila's appeal waiver and guilty plea.**

Finally, the effect of the rule 11 errors in this case is to invalidate Mr. Davila's appeal waiver and require vacatur of his guilty plea. This Court's ordinary rule that it will enforce an appeal waiver so long as the agreement of which it is a part "[1] clearly delineates the waiver's scope; (2) the district court specifically inquired about the waiver at the plea hearing; and (3) denial of the right to appeal would not constitute a miscarriage of justice." *U.S. v. Betancourt-Perez*, 833 F.3d 18, 22 (1st Cir. 2016). Attacks on the validity of a plea itself are an exception to this rule. "Where . . . an appeal challenges the validity of the plea itself, a waiver-of-appeal provision lacks force." *Chambers*, 710 F.3d at 27.

Here, the rule 11 errors—the trial court's improper involvement in plea negotiations, whose coercive effect was intensified by the court's failure to properly explain federal sentencing procedure at Mr. Davila's change of plea hearing—are "inherently coercive," *Braxton*, 784 F.3d at 245, and, because of this, "invalidate both the plea itself and the waiver of [Mr. Davila's] right to appeal," *U.S. v. Miranda*, 654 F.3d 130, 136 (1st Cir. 2011). This case thus presents a circumstance where the inquiry into the validity of the plea and the validity of the appeal

waiver collapse into one. When an appellant successfully attacks the validity of a plea, the remedy is to vacate the plea, the plea agreement, and any associated appeal-waiver provision. "After all, if a plea is invalid, the plea agreement (and, thus, the waiver provision contained with it) disintegrates." *U.S. v. Ramos-Mejia*, 721 F.3d 12, 14 (1st Cir. 2013).

Based on the rule 11 errors, the Court should both decline to enforce Mr. Davila's appeal waiver and vacate his guilty plea.

## II. Assuming the rule 11 violations invalidate the plea and appeal waiver, whether the lower courts' refusal to consider critical credibility evidence based on their erroneous view that the Federal Rules of Evidence apply to suppression hearings necessitates reversal of their denial of Mr. Davila's motion to suppress the fruits of his unlawful arrest.

Next, assuming the Court agrees with Mr. Davila that his plea and appeal waiver are invalid, the Court should also reverse the district court's order denying Mr. Davila's motion to suppress the fruits of his unlawful arrest.

The magistrate erred in refusing to consider the administrative findings by the Bayamon Municipal Police that the arresting officer in this case had previously lied under oath. Even though Mr. Davila

explained to the magistrate that the Federal Rules of Evidence do not

apply to suppression hearings, the magistrate applied Evidence Rule

201 and 608 to exclude those findings, reasoning that, under rule 201, it

could not take judicial notice of administrative findings for the truth of

the matter asserted, and that, under rule 608, it could not accept

extrinsic evidence to impeach a witness's credibility (SAP-91, 93).

Mr. Davila then filed objections to the magistrate's suppression

order in the district court, arguing that the magistrate erred in

applying the Federal Rules of Evidence to exclude evidence of Mr.

Morales's perjury (SAP-270). In a terse order, the district court

overruled those objections and adopted in full the magistrate's order

refusing to consider Mr. Morales's perjury and denying suppression

(App.-512-13).

This was error. "[A]part from questions of privilege, the Federal

Rules of Evidence do not apply at suppression hearings." *Schaefer*, 87

F.3d at 570. Because of this, "a judge presiding at a suppression hearing

may receive and consider any relevant evidence, including affidavits

and unsworn documents that bear indicia of reliability," *id.*, and it is

error for the court to refuse to do so based on the Federal Rules of

Evidence. *See Tassi v. Holder*, 660 F.3d 710, 720-21 (4th Cir. 2011)

(reversing IJ's decision to apply the rules of evidence to exclude "certain

. . . corroborative evidence" because "[i]t is well-established . . . that the

Federal Rules of Evidence do not apply in immigration proceedings"

(citations omitted)); *U.S. v. Ferron*, 357 F.3d 722, 724 (7th Cir. 2004)

(error for sentencing judge to exclude evidence under rule 702 "despite

the fact that the Federal Rules of Evidence do not apply at sentencing").

Given the centrality of Mr. Morales's credibility to the suppression

decision, evidence that he lied under oath was highly relevant. *See*

*Whitmore*, 359 F.3d at 619 ("Nothing could be more probative of a

witness's character for untruthfulness than evidence that the witness

has previously lied under oath."). And even though the government

(rather remarkably) sought to undermine the reliability of the Bayamon

Police Department's administrative finding that Mr. Morales had lied

under oath, neither the magistrate nor the trial court concluded that

those findings lacked sufficient "indicia of reliability" to be admitted

under the operative evidentiary standard at suppression hearings.

Instead, they erroneously rested their decision not to consider that

evidence exclusively on the Federal Rules of Evidence (SAP-91-94; App.-512-13).

The government cannot carry its burden to show that this ruling was harmless. To carry that burden on a preserved evidentiary issue, like this one, the government would have to persuade the court that "it is highly probable that the error did not influence [the suppression hearing's outcome]." *U.S. v. Brown*, 805 F.3d 13, 17 (1st Cir. 2015). But the lower courts' order denying suppression rested, at bottom, on their decision to believe Mr. Morales's testimony that he saw Mr. Davila with a gun. Mr. Morales's credibility was thus the lynchpin of the government's argument for suppression. Under these circumstances, the government simply cannot carry its burden to show, with high probability, that evidence Mr. Morales had previously lied under oath would not have influenced the suppression hearing's outcome.

## III. Even if the Court enforces Mr. Davila's appeal waiver, it should reverse his sentence because the district court imposed numerous nonmandatory supervised release conditions without orally pronouncing or otherwise referencing them at the sentencing hearing.

Finally, if the Court upholds Mr. Davila's appeal waiver, it should nevertheless reverse Mr. Davila's sentence based on the district court's

failure to orally pronounce or reference numerous standard nonmandatory supervised-release conditions that the written judgment imposed.

This circuit does not currently require district judges to orally pronounce each standard condition of supervised release. *See U.S. v. Nardozzi*, 2 F.4th 2, 8 (1st Cir. 2021). Instead, the "standard supervised release conditions set out in the United States Sentencing Guidelines may be adopted by reference at the sentencing hearing." *Id.* But to give adequate notice and an opportunity to object, they also *must*—at minimum—be adopted by reference. *See id.* (requirement that sentencing court "adopt[] a written list of proposed conditions provides . . . necessary notice" even if court doesn't specifically describe each condition it adopts).

Here, the district court failed to either pronounce or adopt the standard supervised-release conditions by reference. The court never adopted the PSR's findings or recommendations at the sentencing hearing. And, when it imposed sentence, it only listed non-standard supervised-release conditions in stating the "terms and conditions" of Mr. Davila's supervised release (App.-653-54). In imposing the standard

conditions, the court thus failed to adhere to the minimum process *Nardozzi* requires.

Even if the Court concludes it is valid, Mr. Davila's appeal waiver does not preclude him from raising this error. Mr. Davila's appeal waiver prohibits him from appealing "any aspect of this case's judgment and sentence, including . . . the terms and conditions of supervised release" (App.-599). But when nonmandatory supervised-release terms are neither orally pronounced nor incorporated by reference, they simply are "not a part of [the] sentence at all." *U.S. v. Singletary*, 984 F.3d 341, 345 (4th Cir. 2021) ("What Singletary waived in his plea agreement was the right to appeal 'the conviction and *whatever sentence is imposed*. . . . [But] discretionary conditions appearing for the first time in a written judgment in fact have *not* been 'imposed' on the defendant."). This challenge thus falls "outside the scope of [Mr. Davila's] promise not to appeal the 'sentence' actually 'imposed' upon him" and so is not precluded by his appeal waiver. *Id.*; *accord U.S. v. Tancil*, 817 F. App'x 234, 236 (7th Cir. 2020) (appeal focused on inconsistency between oral and written judgments "does not fall under the [appeal] waiver").

The Court should accordingly reach this error and reverse for a new sentencing hearing at which Mr. Davila may have the opportunity to object to the imposition of any and all nonmandatory supervised-release conditions the court proposes to impose, including standard condition (8) (which, as written, requires Mr. Davila to provide certain notice to his probation officer even if it is impossible for him to do so) and standard condition (12) (which does not find support in Mr. Davila's record).

## CONCLUSION

Based on the rule 11 violations, including the trial court's improper involvement in plea negotiations, this Court should invalidate Mr. Davila's guilty plea, vacate his convictions, and remand. The Court should also reverse the trial court's order denying suppression of the fruits of Mr. Davila's arrest and remand for further suppression proceedings at which the trial court should consider, in assessing the arresting officer's credibility, the administrative finding made by his Police Department that he had previously lied under oath.

Alternatively, if the Court rejects Mr. Davila's challenge to his guilty plea, and even if it enforces his appeal waiver, it must still

reverse because the district court failed to pronounce or incorporate by reference the standard conditions of supervised release that the written judgment imposed.

Date: July 3, 2024

*/s/ Miles Pope*
W. Miles Pope
Goddard Pope PLLC
967 E. Parkcenter Blvd., No. 1010
Boise, ID 83706

*Attorneys for Defendant-Appellant*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of rule 32(a)(7)(B)(1) of the Federal Rules of Appellate Procedure because it contains 12,950 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Century Schoolbook font.

**Signature:** /s Miles Pope                    **Date:** July 3, 2024

## CERTIFICATE OF SERVICE

I certify that on July 3, 2024, this brief was served on the government by virtue of being filed through the First Circuit Court of Appeals' electronic filing system.

I further certify that on July 3, 2024, I mailed this brief to Mr. Davila via USPS mail.

s/ Miles Pope
Miles Pope

# ADDENDUM

# TABLE OF CONTENTS

District Court's Suppression Order……………………………………..Add. 1

Criminal Judgment……………………………………………………Add. 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES,

    **Plaintiff,**

         **v.**               **Criminal No.** 19-716 (FAB)

ALEX DAVID DÁVILA-OLIVO [1],

    **Defendant.**

**MEMORANDUM AND ORDER**

BESOSA, Senior District Judge.

A district court may refer a pending motion to a magistrate judge for a report and recommendation ("R&R"). See 28 U.S.C. § 636(b)(1)(B); Local Rules Dist. P.R.R. 72(a). Any party adversely affected by the R&R may file written objections within fourteen days of being served with the magistrate judge's report. See 28 U.S.C. § 636(b)(1); Local Rules Dist. P.R.R. 72(d). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or

Criminal No. 19-716 (FAB)                                              2

recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1); Templeman v. Chris Craft Corp., 770 F.2d 245, 247
(1st Cir. 1985); Álamo Rodríguez v. Pfizer Pharmaceuticals, Inc.,
286 F. Supp. 2d 144, 146 (D.P.R. 2003) (Domínguez, J.).
Furthermore, the Court may accept those parts of the R&R to which
the parties do not object. See Hernández-Mejías v. General Elec.,
428 F. Supp. 2d 4, 6 (D.P.R. 2005) (Fusté, J.) (citation omitted).

Defendant Alex Dávila—Olivo ("Dávila") filed a motion to
suppress physical evidence, statements, and in—court and out—of—
court identifications, alleging that his arrest lacked probable
cause and his photo arrays were unnecessarily suggestive. (Docket
No. 133)  The matter was referred to Magistrate Judge Marcos E.
Lopez. (Docket No. 137)  The magistrate judge held an evidentiary
hearing, (Docket Nos. 270—72), and issued a thorough R&R
recommending that the Court deny Dávila's motion. (Docket No. 260)
Dávila filed timely objections to the R&R and requests a new
evidentiary hearing. (Docket No. 275)  The government responded
in opposition. (Docket No. 283)

Having made an independent examination of the entire record
in this case, including Dávila's objections, the Court **ADOPTS IN
FULL** the magistrate judge's findings and recommendations (Docket
No. 260), and **DENIES** Dávila's motion to suppress (Docket No. 133).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 23, 2022.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
District of Puerto Rico

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| v. | ) | |
| Alex David DAVILA-OLIVO (1) | ) | Case Number:  3:19-cr-716-01(FAB) |
| | ) | USM Number:  32951-069 |
| | ) | Melanie Carrillo-Jimenez |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    Counts One (1), Two (2), and Three (3) of the Third Superseding Indictment on 5/5/2023.

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §924(c)(1)(A)(i) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime. | 10/29/2019 | One (1) |
| 21 USC §§841(a)(1) | Possession with Intent to Distribute Controlled Substances. | 10/29/2019 | Two (2) |
| 18 USC §§922(g)(1) & 924(a)(2) | Prohibited Person in Possession of Firearm and Ammunition: Convicted Felon | 10/29/2019 | Three (3) |

The defendant is sentenced as provided in pages 2 through    7    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)    4, 5, 6, 7, 8, 9          ☐ is   ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

9/15/2023

Date of Imposition of Judgment

/S/ FRANCISCO A. BESOSA

Signature of Judge

Francisco A. Besosa, Senior U.S. District Judge

Name and Title of Judge

9/15/2023

Date

**Add.004**

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page  2  of  7

DEFENDANT:   Alex David DAVILA-OLIVO (1)
CASE NUMBER:   3:19-cr-716-01(FAB)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Sixty (60) months as to Count One, followed by one hundred and twenty (120) months as to Counts Two and Three to be served concurrently with each other, but consecutively to Count One, for an aggregate sentence of one hundred and eighty (180) months.

☑ The court makes the following recommendations to the Bureau of Prisons:
   The defendant be provided of any available vocational training, courses in English as second language, and the 500-hour drugs/alcohol treatment program if he qualifies.
   The Court recommends the defendant be designated to a FCI Fort Dix, NJ.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____   ☐ a.m.   ☐ p.m.   on _____ .

   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on _____ .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**Add.005**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___7___

DEFENDANT:   Alex David DAVILA-OLIVO (1)
CASE NUMBER:   3:19-cr-716-01(FAB)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Five (5) years as to Counts One and Two, and three (3) years as to Count Three, to be served concurrently with each other.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you
       pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3A — Supervised Release

Judgment—Page __4__ of __7__

DEFENDANT:  Alex David DAVILA-OLIVO (1)
CASE NUMBER:  3:19-cr-716-01(FAB)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____   Date _____

**Add.007**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3B — Supervised Release

Judgment—Page  5  of  7

DEFENDANT:   Alex David DAVILA-OLIVO (1)
CASE NUMBER:   3:19-cr-716-01(FAB)

## ADDITIONAL SUPERVISED RELEASE TERMS

1. He shall participate in transitional and reentry support services, including cognitive behavioral treatment services, under the guidance and supervision of the Probation Officer. Mr. Davila shall participate in the services until he is discharged by the service provider, with the approval of the Probation Officer.

2. He shall participate in vocational training and a job placement program, as recommended by the Probation Officer.

3. He shall provide the Probation Officer access to any financial information upon request.

4. He shall participate in an approved mental health treatment program for evaluation and to determine if treatment is necessary. If deemed necessary, the treatment will be arranged by the Probation Officer in consultation with the treatment provider; the modality, duration, and intensity of treatment will be based on the risks and needs identified in Mr. Davila's case. Mr. Davila shall contribute to the costs of those services, based on his ability to pay or the availability of payments by third parties.

5. He shall cooperate in the collection of a DNA sample, as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563(a)(9).

6. He must not knowingly enter the José Celso Barbosa Public Housing Project in Bayamón, without first obtaining the permission from the Probation Officer.

7. He shall submit himself and his property, house, residence, vehicles, papers and effects, computers and other electronic communication or data storage devices or media to a search, at any time, with or without a warrant, by the probation officer, and if necessary, with the assistance of any other law enforcement officer, but only in the lawful discharge of the supervision functions of the probation officer who must have a reasonable suspicion of unlawful conduct or of a violation of a condition of supervised release. The probation officer may seize any electronic communication or electronic device or medium which will be subject to additional forensic investigation or analysis. Failure to submit to a search or permit a seizure may be grounds for revocation of supervised release. Mr. Davila  shall warn any other resident or occupant that his premises and residence may be subject to searches pursuant to this condition.

8. He shall not posses or use controlled substances unlawfully, and shall submit to a drug test within fifteen (15) days of release from imprisonment; after his release, Mr. Dávila shall submit to random drug testing, not less than three (3) samples during the supervision period, but not more than 104 samples each year, in accordance with the Drug Aftercare Program Policy of the United States Probation Office, as has been approved by this Court. If the illegal use of controlled substances is detected in any sample, Mr. Dávila shall participate in an inpatient or an outpatient substance abuse treatment program, for evaluation or treatment, as arranged by the Probation Officer; payment shall be based on his ability to pay or the availability of payments by third parties, as approved by the Court.

9. He shall cooperate with child support enforcement authorities and pay child support as required by Law.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page  6  of  7

DEFENDANT: Alex David DAVILA-OLIVO (1)
CASE NUMBER: 3:19-cr-716-01(FAB)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 300.00 | $ | $ 0.00 | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $                0.00 | $                0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**Add.009**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:  Alex David DAVILA-OLIVO (1)
CASE NUMBER:  3:19-cr-716-01(FAB)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ __300.00__ due immediately, balance due

       ☐ not later than _____ , or
       ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Case Number
Defendant and Co-Defendant Names                                      Joint and Several            Corresponding Payee,
*(including defendant number)*           Total Amount                Amount                     if appropriate

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**Add.010**