# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

## APPEAL NO. 23-1900

## UNITED STATES
Appellee

### v.

## ALEX DAVID DÁVILA-OLIVO,
Defendant - Appellant

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---

## BRIEF FOR APPELLEE

---

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

Julia M. Meconiates
Assistant United States Attorney
U.S. Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# T<small>ABLE OF</small> C<small>ONTENTS</small>

Table of Authorities ............................................................. iv

Jurisdictional Statement ......................................................1

Statement of the Issue on Appeal .......................................2

Statement of the Case ........................................................3

Summary of the Argument..................................................15

Argument ...........................................................................18

   **I.**    **Dávila has failed to establish plain error in the district court's Lafler/Frye hearing or in the Rule 11 colloquy at the change-of-plea hearing.**

     Issue ......................................................................18

     Standard of Review ...............................................18

     Discussion .............................................................21

   **II.**   **Even if this Court were to agree that Dávila's plea should be vacated, this Court would not have jurisdiction to review the district court's order denying suppression.**

     Issue ......................................................................33

     Standard of Review ...............................................33

     Discussion .............................................................33

**III. The waiver of appeal bars Dávila's challenge to the standard conditions of supervised release.**

Issue ....................................................................................................36

Standard of Review ...........................................................................36

Discussion ..........................................................................................37

Conclusion..........................................................................................42

Certificate of Compliance .................................................................43

Certificate of Service .........................................................................44

# TABLE OF AUTHORITIES

## FEDERAL CASES

Kimbrough v. United States, 552 U.S. 90 (2007) ...............................................29

Missouri v. Frye, 566 U.S. 134 (2012) ............................................................7, 34

Molina-Martinez v. United States, 578 U.S. 189 (2016)....................................31

Rita v. United States, 511 U.S. 338 (2007)..........................................................29

United States v. Bey, 825 F.3d 75 (1st Cir. 2016) ...............................................37

Untied States v. Bierd, 217 F.3d 15 (1st Cir. 2000) ..................................... 21-23

United States v. Casallas, 59 F.3d 1173 (11th Cir. 1995) ..................................23

United States v. Casiano-Santana, 1 F.4th 100 (1st Cir. 2021).................... 34-35

United States v. Chambers, 710 F.3d 23 (1st Cir. 2013) ................. 27-28, 37, 40

United States v. Cruz, 49 F.4th 646 (1st Cir. 2022)............................................41

United States v. Cunningham, 113 F.3d 289 (1st Cir. 1997) ............................34

United States v. Dominguez-Benitez, 542 U.S. 74 (2004) ...............................24

United States v. Dávila, 596 U.S. 597 (2013) ......................................................25

United States v. Frank, 36 F.3d 898 (9th Cir. 1994)...........................................23

United States v. Gardner, 5 F.4th 110, 114 (1st Cir. 2021) ..............................19

United States v. Miliano, 480 F.3d 605 (1st Cir. 2007)......................................38

United States v. Moller-Butcher, 723 F.2d 189 (1st Cir. 1983)........................34

United States v. Nardozzi, 2 F.4th 2 (1st Cir. 2021)....................................38-39

United States v. Pabon, 819 F.3d 26 (1st Cir. 2016) ..........................................41

United States v. Pagan-Ortega, 372 F.3d 22 (1st Cir. 2004) ..................... 20, 22

United States v. Paul, 634 F.3d 668 (2d Cir. 2011) ...........................................25

United States v. Rodriguez, 197 F.3d 156 (5th Cir. 1999) ...............................23

United States v. Sepulveda-Contreras, 466 F.3d 166 (1st Cir. 2006) ........ 38-39

United States v. Soto-Soto, 855 F.3ed 445 (1st Cir. 2017)................................20

United States v. Teeter, 257 F.3d 14 (1st Cir. 2001) ........................................36

United States v. Texeira-Nieves, 23 F.4th 48 (1st Cir. 2022)...........................29

United States v. Tulloch, 380 F.3d 8 (1st Cir. 2004) ........................................40

United States v. Urbina-Robles, 817 F.3d 838 (1st Cir. 2016) .................. 29, 31

United States v. Uribe-Lodono, 409 F.3d 1 (1st Cir. 2005) .............................23

United States v. Williams, 48 F.4th 1 (1st Cir. 2022) ......................................20

## FEDERAL STATUES

18 U.S.C. § 3231....................................................................................................1

18 U.S.C. § 3553(a)..............................................................................................27

18 U.S.C. § 3742(a)................................................................................................1

28 U.S.C. § 1291....................................................................................................1

## FEDERAL RULES

1st Cir. R. 27.0(c)................................................................................................33

Fed. R. App. 4(b)....................................................................................................1

Fed. R. Crim. P. 11(a)(2) ....................................................................................34

Fed. R. Crim. P. 11(b)(1) ....................................................................................26

Fed. R. Crim. P. 11(b)(1)(M)...............................................................................27

# JURISDICTIONAL STATEMENT

This is an appeal from a judgment entered in Criminal Case 19-716.[1] The district court had original jurisdiction pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction over direct appeals of final sentences and other decisions by the district court. 18 U.S.C. § 3742(a); 28 U.S.C. § 1291. Although Dávila's notice of appeal was originally untimely, the district court granted his request to extend the time to file the notice of appeal. Fed. R. App. 4(b); (AD 4, AA 667-68; DE 388).

_____

[1] Citations to the record will be as follows: AB (Appellant's Brief); AA (Appellant's Appendix); AD (Appellant's Addendum); SA (Sealed Appendix); DE (Docket Entry).

I.     Whether Dávila established the district court plainly erred by participating in plea negotiations and that the magistrate judge plainly erred during the Rule 11 colloquy?

II.    Whether Dávila can challenge the suppression order on appeal?

III.   Whether Dávila's challenges to his supervised release conditions are encompassed in his valid and enforceable waiver of appeal?

## I. Offense Conduct

In the summer and fall of 2019, Dávila, a federal felon on supervised release for drug-trafficking crimes, went on a crime spree. It all started in mid-August when Dávila approached a victim arriving at home in Bayamón, Puerto Rico at 1:30 am. (SA 136-37). Dávila pointed a dark firearm at the victim and demanded the victim's cellphone. (SA 137) When the victim told Dávila the phone was in the car, Dávila demanded the car keys. (SA 137). Dávila entered the victim's Hyundai Sonata, and the victim ran away and hid for 15-20 minutes. (SA 137). Upon returning home, the victim saw that the car and Dávila were no longer there. (SA 137).

But one Hyundai was not enough. Six days later, Dávila participated in the carjacking of a Hyundai Elantra in Bayamón, Puerto Rico. (SA 137). The victim was an Uber driver that picked up four men in San Juan. (SA 137). Dávila sat in the front seat with the driver, while his three cohorts sat in the back. (SA 137). After arriving at Bayamón, the person seated behind the driver put a metal wire around the driver's neck and ordered the driver to stop. (SA 137). After the driver stopped the car, the assailants searched the

driver, pulled the driver out of the car, and hit the driver on the head with a blunt object before ordering the driver to walk away. (SA 137-38).

The successful Uber carjacking prompted another. On October 24, 2019, an Uber driver picked up three passengers in Bayamón, Puerto Rico in his Toyota Yaris. (SA 138). Like the previous Uber carjacking, a passenger in the back wrapped a wire around the driver's neck, threatening to strangle the driver. (SA 138). The passenger in the front seat hit the driver, while another used a baton to hit him over the head. (SA 138). The assailants pulled the driver out of the car before driving away. (SA 138). The victim lost consciousness and sustained painful injuries. (SA 138).

The carjackings continued. The very next day, Dávila and another man approached a person arriving home at 6:25 in the morning. (SA 139). Armed with a black firearm, Dávila told the victim to get out and eventually carjacked the victim's Toyota Corolla. (SA 139). Dávila drove the Corolla away. (SA 139).

Days later, Puerto Rico Police officers were conducting a preventative patrol at a public housing project in Bayamón, Puerto Rico. (SA 140). Dávila was there and when he saw the marked police car, he ran. (SA 140). Dávila had a firearm in his hands, along with a travel bag. (SA 140). Police officers

saw Dávila throw the bag. (SA 140). After arresting Dávila, the agents recovered the thrown bag and a loaded firearm next to it. (SA 140). Officers also searched Dávila and found a fanny pack containing two plastic vials of marijuana and a cell phone. (SA 140). Inside the travel bag, agents saw Dávila toss, agents seized one Glock magazine, loaded with 15 rounds, one cellular phone, and a drug ledger. (SA 140).

On the day of his arrest, Dávila's cell phone contained the SIM card belonging to the Yaris Uber driver in his cell phone. (SA 139). All the carjackings victims identified Dávila in photographic lineups. (SA 137-39).

## II.    Procedural History

Based on this conduct, a grand jury charged Dávila and three others in a nine-count, third superseding indictment. (AA 56-61). Count one charged Dávila with possession of a firearm in furtherance of a drug trafficking crime. (AA 56). Count two charged Dávila with possession with the intent to distribute marijuana. (AA 57). Count three charged Dávila with being a convicted felon in possession of a firearm and ammunition. (AA 57). Count four charged Dávila with the August 11, 2019 carjacking of the Hyundai Sonata, while Count five charged Dávila with brandishing a firearm during that carjacking. (AA 57-58). Count six charged Dávila and two co-defendants

with the carjacking of the Toyota Yaris. (AA 58-59). Count seven charged Dávila and a co-defendant with the carjacking of the Corolla, while Count eight charged them with brandishing a firearm during in in relation to that carjacking. (AA 59). Count nine charged Dávila and a co-defendant with the carjacking of the Hyundai Elantra. (AA 60).

Dávila moved to suppress evidence prior to trial and the government opposed. (AA 62-114; SA 1-79). A magistrate judge held a three-day suppression hearing and recommended the district court deny Dávila's suppression motion. (SA 80-127). Although Dávila objected to the magistrate judge's report and recommendation, the district court adopted the magistrate judge's findings and recommendations and denied Dávila's request for suppression. (SA 258-89; AA 512-14).

Having denied the Dávila's motion to suppress, at the following status conference the government informed the court that a plea offer had been tendered. (DE 297). Counsel for Dávila requested the court set a pretrial conference and the court agreed. (DE 297). At the following pretrial conference, counsel for Dávila reaffirmed her client was proceeding to trial. (AA 518). When the court asked whether it was likely Dávila would plead guilty, counsel stated the offer was 270 months' imprisonment, which was

"a hard pill to swallow." (AA 518). The government explained that Dávila was charged in every count of the indictment, including three § 924(c) counts. (AA 520). Counsel advised the court she had spoken to Dávila regarding the penalties he was facing if he exercised his right to trial and said she would discuss the issue with Dávila another time. (AA 520). When the district court asked whether counsel wanted a *Lafler* hearing,[2] counsel said, "[t]hat would be good." (AA 520).

---

[2] A *Lafler* hearing is sometimes referred to as a *Lafler/Frye* hearing. In *Missouri v. Frye*, 566 U.S. 134 (2012), the Supreme Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id*. at 145. Recognizing that this holding would create an opportunity for defendants to manipulate the process by making "late, frivolous, or fabricated claims . . . after a trial leading to a conviction with resulting harsh consequences," *id*. at 146, the Supreme Court went on to suggest that trial courts consider adopting procedures to deter such occurrences. Among these procedures, the Supreme Court suggested that "formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." *Frye*, 566 U.S. at 146. This procedure benefits both defendants and attorneys, as it ensures defendants have been apprised of potentially beneficial plea offers that otherwise may not have been presented by defense attorneys. Moreover, having the defendant's acknowledgement that he is aware of an offer on the record avoids frivolous potential claims of lack of knowledge.

At the hearing, counsel for Dávila advised the court she had previously explained to Dávila the purpose of the hearing. (AA 529). The court told Dávila that the prosecutor would go through each count and explain the sentencing exposure if found guilty versus accepting the plea agreement. (AA 529-30). The court told Dávila that with this information, "you will know what you are exposed to and what the Government is offering you, and then you can make up your mind whether you will go to trial with the risk of being found guilty or accept what the Government is offering in its plea agreement." (AA 530). Dávila told the court he understood. (AA 530).

When the court suggested that the prosecutor go through each count and advise the sentencing exposure if proceeding to trial and then explain the plea offer, counsel for Dávila and the government agreed with this procedure. (AA 531). The prosecutor then went through the nine counts in the indictment setting forth the proposed guidelines should Dávila proceed to trial, and the court advised the mandatory minimums and maximum penalties. (AA 531-552, 554-62). Counsel for Dávila agreed with the summary. (AA 554). The court summarized Dávila's potential guideline exposure if he proceeded to trial, explaining he could be facing a sentence of

490 months or less, while the high end of the guidelines would be 593 months. (AA 559). Counsel for Dávila agreed with the court's statement. (AA 560). The prosecutor then advised the plea offer was for 270 months' imprisonment. (AA 562). The government confirmed the offer was still available and that Dávila had never made a counteroffer. (AA 562). When the court asked whether the government would consider a counteroffer, the government replied, "We would be open to a counteroffer." (AA 562). Dávila stated he understood. (AA 564). The district court set a pretrial hearing for 30 days in the event Dávila chose to go to trial. (AA 565). If Dávila opted to change his plea, the hearing would serve as a change-of-plea hearing. (AA 565).

Dávila filed a motion with the court, expressing his desire to go to trial. (DE 329). At the pretrial hearing in August 2022, counsel for Dávila advised the court that the counteroffer was rejected, while the government explained that further plea negotiations were unlikely. (AA 579-80). The court set a final pretrial conference for October 2022. (AA 581). At the pretrial conference, the parties discussed the different possible trial dates. (AA586-590). Based on counsel's request, the court scheduled trial for April 17, 2023.

(AA 590). The court stated, "[t]hat will give you a chance to twist your client's arm." (AA 590).

On April 4, 2023, less than two weeks prior to the scheduled trial date, Dávila filed a motion for a change-of-plea, explaining he reached an agreement with the government to plead guilty to Counts One, Two, and Three of the third superseding indictment. (DE 358). The plea agreement provided that the parties would recommend a sentence of 60 months for the firearms count in connection with the drug trafficking, and a term of 120 months for the drug and felon in possession counts, for a total of 180 months' imprisonment. (AA 598). The government agreed to dismiss all remaining counts. (AA 602). The agreement also contained a waiver of appeal provision, whereby Dávila agreed to waive his right to appeal his judgment and sentence, including the term and conditions of his supervised release, if the court sentenced him to 15 years or less. (AA 599).

Although the parties appeared before a magistrate judge to change Dávila's plea, counsel for Dávila stated the hearing could not be held and that Dávila would exercise his right to trial. (AA 611). The court told Dávila that he was the only person that could decide whether to take the plea or proceed to trial, but the court had an obligation to make sure Dávila knew

the details of the plea offer. (AA 612). Dávila told the court he just needed "some time to process all this first." (AA 612).

When the court asked whether there was a plea offer, the government provided some background regarding the case. (AA 612). The prosecutor noted the plea negotiation process was "intense," and that the plea offer extended to Dávila was "highly unusual" because the government agreed to dismiss all four carjacking counts, along with two firearm charges that each carried a consecutive, 7-year mandatory minimum sentence. (AA 612-13). The prosecutor explained that Dávila would face over 30 years in prison if convicted at trial. (AA 613). After the prosecutor explained the details of the plea offer, the court asked Dávila whether he understood the offer and the possible sentences he would face if he proceeded to trial and was convicted. (AA 615-17). Dávila said he understood. (AA 617).

Turning to Dávila, the court recognized it was "not an easy decision." (AA 617). The court explained to Dávila that he was the only one who could make the decision and that he needed to decide or whether to accept the plea offer or exercise the right to go to trial. (AA 618). The court said that Dávila could have some time to talk to his attorney prior to deciding. (AA 618). After taking a break, Dávila told the court he wanted to plead guilty. (AA

619). After conducting a thorough Rule 11 colloquy, Dávila pleaded guilty to Counts One, Two, and Three. (AA 619-39).

Less than one month after the change-of-plea hearing, counsel for Dávila filed a motion seeking to withdraw from representation because Dávila alleged that counsel forced him to plead guilty. (SA 128-30). The court granted the motion and appointed another attorney to represent Dávila. (DE 371-72).

Dávila's new attorney filed a motion seeking to continue the sentencing hearing. (DE 377). Counsel reminded the court she was appointed because Dávila claimed his previous attorney coerced him to change his plea. (DE 377). As a result, newly appointed counsel had requested time to meet with Dávila and determine whether he would move to withdraw his plea. (DE 377). Ultimately, Dávila opted to continue with sentencing, advising his attorney that "he [would] not move to withdraw his guilty plea." (DE 377). Consequently, counsel requested the court continue the sentencing hearing so that the probation officer could finish the interview with Dávila and prepare a thorough report. (DE 377). The court granted the request. (DE 378).

At the sentencing hearing, counsel for Dávila noted that she was appointed to represent him after Dávila pleaded guilty. (AA 643). Counsel explained that Dávila asked her to state for the record that he was coerced into pleading guilty by his former attorney. (AA 643). When the court asked whether Dávila wanted to continue the sentencing hearing, counsel asked whether the court would allow Dávila to withdraw his plea. (DE 644). The court said it would not and the parties continued with the sentencing hearing. (AA 644).

After the parties provided their joint recommendation for a total 15-year sentence, Dávila presented his allocution. (AA 644-48). Dávila explained that he was first charged with being a felon in possession and then he was charged with "some carjackings and some other things that I never did," so that was the reason he wanted to withdraw his plea. (AA 648). The district court denied his request. (AA 649). After calculating the advisory guideline range and balancing the sentencing factors, the district court

accepted the parties' joint recommendation for a total sentence of 15 years. (AA 649-53).[3] This appeal ensued.

---

[3] In a separate subsequent proceeding, the district court revoked Dávila's supervised release and imposed a 3-year sentence as requested by the parties. (Criminal Case No. 09-173, DE 4615). Dávila did not appeal the amended judgement in case 09-173.

Dávila has failed to establish the district court plainly erred by participating in the plea negotiations. Counsel for Dávila agreed that a *Lafler/Frye* hearing was appropriate to document that Dávila was aware of the favorable plea terms that the government had extended. During the hearing, the district court did not indicate it preferred a plea, nor did it attempt to fashion the terms of the agreement. After the hearing, Dávila did not plead guilty, but instead persisted in exercising his right to trial. Given these facts, the district court's statements at the *Lafler/Frye* hearing could not have coerced Dávila into pleading guilty. The fact that he pleaded guilty nine months later was due to intense negotiations that resulted in a plea offer that was 7.5 years less than the plea offer discussed at the hearing. Dávila cannot show error, much less an error that prejudiced him.

Nor did the magistrate judge violate Rule 11 during the plea colloquy. There is no specific script a court must use to comply with Rule 11. At Dávila's change-of-plea hearing, the magistrate judge noted the court would consider, but not necessarily follow, the guidelines. It also mentioned the sentencing court would consider the sentencing factors. Although the court did not use Rule 11's language verbatim, it was not required to do so. Nor

has Dávila provided any support for his contention that the court was required to provide a sentencing primer at the change-of-plea hearing. There was no error. And even if there was error, Dávila suffered no prejudice. Dávila has failed to show that if them magistrate judge had more fully explained the sentencing factors and the guidelines, he would not have entered a guilty plea. Dávila's convictions should be affirmed as his plea was knowing and voluntary. Because Dávila's plea was knowing and voluntary and the waiver of appeal is enforceable, his remaining claims are barred.

Even if this Court were to agree that there was reversible Rule 11 error, this Court cannot review the district court's order denying suppression in this appeal. Denials of orders of suppression can be reviewed following the entry of final judgment. If his case were to be remanded, Dávila would either proceed to trial or plead guilty. An appellate court cannot conduct interlocutory review a district court's denial of a defendant's motion to suppress. Therefore, the issue is not ripe for this Court's review.

Lastly, the waiver of appeal bars Dávila's challenge to his standard conditions of supervised release. The waiver was both knowing and voluntary and enforcement of the waiver of appeal would not result in a miscarriage of justice. Although the district court did not mention the

mandatory and standard conditions of release at Dávila's sentencing hearing, this Court's jurisprudence explains defendants are on constructive notice of those conditions. Therefore, there was no error, much less a miscarriage of justice. Dávila's claim of sentencing error is barred by his waiver of appeal.

## I. Dávila has failed to establish plain error in the district court's *Lafler/Frye* hearing or in the Rule 11 colloquy at the change-of-plea hearing.

**Issue**

Dávila argues his guilty plea should be vacated for two separate Rule 11 errors. First, he claims the district court improperly participated in plea negotiations during the *Lafler/Frye* hearing and in a pretrial conference. (AB 40-46). Second, he claims the magistrate judge violated Rule 11(b)(1)(M) during the change-of-plea hearing because he did not adequately explain the role of the sentencing guidelines and the statutory sentencing factors. (AB 46-50).

**Standard of Review**

Although Dávila claims his Rule 11 errors were preserved, review of the record illustrates he lodged no objection to the district court's alleged participation in plea negotiations in the *Lafler/Frye* hearing or the magistrate judge's Rule 11 colloquy. Dávila's attempt to sidestep the fact he forfeited these arguments below fails. Although Dávila's counsel mentioned his desire to withdraw his plea at the sentencing hearing based on alleged

coercion from previous counsel (AA 643), that did not preserve the Rule 11 errors he now raises on appeal.

For starters, Dávila never actually moved to withdraw his plea in a meaningful way. And although claims of coercion were alluded to on the record, none of those claims were ever litigated in the district court.[4] When the Federal Public Defender's office moved to withdraw from representation, the motion advised that Dávila was alleging his attorney, not the court, coerced him into pleading guilty. (SA 128-29). His newly appointed counsel also recognized this was Dávila's claim. (DE 377). Notwithstanding, Dávila's second counsel said he did not want to proceed with a plea withdrawal motion. (DE 377).

It was only at sentencing that counsel explained that Dávila wanted her to state for the record that his previous attorney coerced him into pleading guilty. (AA 643). And during his allocution, Dávila stated he wanted to withdraw his plea because he was innocent, not because the court

---

[4] Rule 11(d)(2)(B) provides that a defendant may withdraw a guilty plea if he "can show a fair and just reason for requesting the withdrawal." In making this assessment, courts consider a list of factors set forth in *United States v. Gardner*, 5 F.4th 110, 114 (1st Cir. 2021). Dávila never meaningfully litigated the issue with the district court.

coerced him. (AA 648). In short, nothing on the record adequately put the court on notice that Dávila would be pursuing a Rule 11 claim that the court coerced him into pleading guilty or that the court did not adequately explain the sentencing process during the change-of-plea hearing. *United States v. Soto-Soto*, 855 F.3ed 445, 448 n.1 (1st Cir. 2017) ("To preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error."). Dávila's claims were not preserved.

Unpreserved claims of Rule 11 error are viewed for plain error only. *United States v. Williams*, 48 F.4th 1, 5 (1st Cir. 2022); *United States v. Pagan-Ortega*, 372 F.3d 22, 27 (1st Cir. 2004) (reviewing claim of participation in plea negotiations for plain error even when appellant filed a motion for plea withdrawal but for different reasons). To prevail on plain error, Dávila must establish that (1) an error occurred; (2) the error was plain and obvious; (3) the error affected his substantial rights; and (4) seriously affected the fairness, integrity or public reputation of the judicial proceedings. *Id.*

**Discussion**

### A. Dávila cannot establish the district court plainly erred by participating in his plea negotiations.

Dávila's first claim of Rule 11 is easily dispelled because even if there was error, Dávila cannot show prejudice. For starters, the alleged transgressions occurred in the context of a *Lafler/Frye* hearing, which Dávila's own counsel agreed was appropriate in this case. (AA 520). During that hearing, the prosecutor set forth the proposed guideline ranges if Dávila chose to proceed to trial and if he accepted the agreement. (AA 531-55). Dávila was also advised of the statutory penalties associated with each count. (AA 531-555). At the end of the hearing, the court advised the parties that it would set a pretrial conference or change-of-plea hearing in 30 days so Dávila could discuss the matter and decide how he wished to proceed. (AA 565).

The district court's statements at the *Lafler-Frye* hearing did not constitute impermissible intervention. In *Untied States v. Bierd,* this Court explained the ban on judicial participation in plea negotiations furthers three important goals. 217 F.3d 15, 19 (1st Cir. 2000). First, the philosophy behind the ban is that judicial involvement in the plea process carries a risk of

coercing a defendant to accept the proposed plea agreement. *Id*. Second, it is in the interests of all that the court remain aloof so that the court's impartiality and objectivity is not open to question at the time the court imposes sentence. *Id*. Lastly, prohibiting judicial participation in plea negotiations allows a court to remain impartial when assessing the voluntariness of a plea, or presiding over trial if negotiations are not fruitful. *Id*.

In *Bierd,* this Court surveyed examples of improper participation in plea negotiations, and the court's comments here are not comparable to those examples. 217 F.3d at 19-21. During the hearing, the district court never commented on what it perceived would be the appropriate penalty for Dávila. *Id*. Nor did it threaten Dávila with a higher sentence if he exercised his right to trial *Id*. While it is undisputed the court compared the plea offer to Dávila's sentencing exposure if he chose to proceed to trial, it was done only after counsel agreed a *Lafter/Frye* hearing was appropriate. *See United States v. Pagan-Ortega*, 372 F.3d 22, 28 (1st Cir. 2004) (finding no plain error when court commented the plea offer was a "super break" and "good deal" when comparing the risk of conviction to the plea offer). And although the court provided the parties with 30-days to continue negotiations, the court

22

never attempted to shape the terms of the agreement. *Bierd*, 217 F.3d at 21. Most importantly, the court concluded the hearing advising the Dávila he had the choice to plead guilty or proceed to trial. *See United States v. Uribe-Lodono*, 409 F.3d 1, 4 (1st Cir. 2005) (finding no plain error when court told counsel and defendant that the trial process would continue and whether plea negotiations occurred was up to the parties).

The cases cited by Dávila do not help him. The district court never threatened Dávila with a higher sentence like the court did in *United States v. Casallas*, 59 F.3d 1173, 1178 (11th Cir. 1995). Nor did the court indicate a belief that if Dávila opted for trial, he would likely be found guilty as in *United States v. Rodriguez,* 197 F.3d 156, 159 (5th Cir. 1999). As this Court noticed, "[t]he rule against judicial participation in plea bargaining protects the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge. It does not establish a series of traps for imperfectly articulated oral remarks." *Bierd*, 217 F.3d at 21 (quoting *United States v. Frank*, 36 F.3d 898, 903 (9th Cir. 1994)). Here, none of the court's remarks came with any threats, veiled preferences, or explicit or implicit coercion. There was no Rule 11 error.

But even if this Court were to assume the district court crossed the line at the *Lafter/Frye* hearing, Dávila cannot establish any prejudice. To establish prejudice, Dávila must show "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004). "A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceedings." *Id*. (internal quotations omitted). Dávila cannot make this showing.

The fatal flaw in Dávila's argument is that he never accepted the government's initial plea offer, despite the alleged coercion that occurred at the *Lafler/Frye* hearing. Less than one month after the hearing, counsel filed a motion indicating that Dávila "will be exercising his constitutional right to a jury trial." (DE 329). Dávila reiterated his desire to go to trial at the pretrial conference in October 2022. (AA 585). At counsel's request, trial was scheduled for April 2023. (AA 590).[5]

---

[5] The court's comment that scheduling trial in April would give counsel the "chance to twist your client's arm" does not change the analysis. (AA 590). For starters, Dávila was not present at the conference and nothing on the

And when Dávila did request to change his plea in April 2023 (DE 358), it was after "intense negotiations" resulting in a more favorable offer tendered nine months after the hearing. (AA 612). The prosecutor explained the plea offer was "highly unusual," and noted that defense counsel had been key in the government agreeing to dismiss all four carjacking counts, in addition to two firearm counts that each carried a consecutive mandatory minimum of seven years. (AA 612-13). The revised plea agreement contained a sentencing recommendation that was 7.5 years lower than the original plea offer discussed at the July 2022 *Lafler/Frye* hearing. (Compare AA 561 to AA 598). Dávila has failed to show how the district court's statements at the July 2022 hearing had any effect on him, as he consistently rejected that offer after the hearing. What's more, counsel was actively planning to proceed to trial. *See United States v. Dávila*, 596 U.S. 597, 612 (2013) (explaining that to show prejudice in a claim of judicial participation

———————————

record indicates he knew the district court made this statement to counsel prior to pleading to a more favorable offer. And most importantly, as set forth above, when Dávila did choose to plead guilty it was months later to a different plea deal. *See United States v. Paul*, 634 F.3d 668, 674 (2d Cir. 2011) (finding no improper judicial participation in plea when court made challenged remarks to counsel outside presence of defendant and neither counsel nor defendant every objected or alleged coercion).

in the plea agreement, defendant must show it "was reasonably probable that, but for [the district court's] exhortations, Dávila would have exercised his right to go to trial").[6] Dávila did not plead guilty because of judicial participation in the plea negotiation process, but rather because he was able to secure a more beneficial plea offer nine months later. Nothing in the record supports a claim that Dávila pleaded guilty to a more beneficial plea agreement because the court coerced him into doing so when setting out the terms of the plea agreement he rejected after the *Lafler/Frye* hearing. Dávila cannot show the district court plainly erred and participated in the plea negotiations.

### B.    The court did not plainly err at the change-of-plea hearing.

The magistrate judge did not commit Rule 11 error at Dávila's change-of-plea hearing. Rule 11 (b)(1) of the Federal Rules of Criminal Procedure provides that prior to accepting a guilty plea, a court must address the defendant openly in court and provide certain explanations. Fed. R. Crim. P. 11(b)(1). Among the topics the court must explain, is "the court's obligation

---

[6] By the time counsel filed a motion requesting the court set a hearing for Dávila to change his plea, Dávila filed proposed voir dire and jury instructions. (DE 298-99).

to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)." Fed. R. Crim. P. 11(b)(1)(M). The magistrate judge satisfactorily complied with Rule 11.

At the hearing, the magistrate judge noted that prior to imposing sentence, "the District Judge is required to consider but not necessarily follow the Sentencing Guidelines." (AA 628). Dávila also acknowledged that he spoke with his attorney about how the guidelines might apply in his case. (AA 629). The court then went on to explain the sentencing factors, specifically mentioning "the seriousness of the offense, the need for deterrence of criminal conduct, the need to protect the public from further crimes, the need to provide the defendant with needed educational or vocational training or medical care and the need to provide restitution to any victims." (AA 629). Dávila told the court he was aware the court would consider those factors when deciding his sentence. (AA 629). No more was needed.

"[A] district court need not follow a precise script" during a Rule 11 colloquy. *United States v. Chambers*, 710 F.3d 23, 28 (1st Cir. 2013). For that reason, this Court has explained that Rule 11(b)(1)(M) "does not mandate a

talismanic statement, in formulaic language, as to the advisory nature of the sentencing guidelines." *Id*. Although Dávila faults the court for not stating it was "obligated to calculate the guideline range" and required to consider departures, the court did say it was required to consider the guidelines. (AA 628). This was sufficient. To meaningfully consider the guidelines, the court would have to calculate them. Likewise, although the court did not use the word "advisory" (AB 49), the court did explain to that the sentencing court was not required to follow the guidelines. (AA 628).[7] The court had also previously advised Dávila that the sentencing court could impose any sentence up to the maximum during the same hearing. (AA 624). And although the court mentioned some of the sentencing factors but not all of them, Dávila has failed to cite to any authority showing inclusion of some

---

[7] The record does not support Dávila's argument that the magistrate judge's colloquy suggested the guidelines are presumptively reasonable. After all, by the very terms of his plea agreement, Dávila was requesting the court impose an upwardly variant sentence. Specifically, the parties agreed Counts Two and Three yielded a total offense level of 19 in Dávila case. (AA 598). Even assuming a criminal history category of V would correspond to a guideline range of 63-78 months. Notwithstanding, the parties agreed to recommend a sentence of 120 months' imprisonment, which corresponded to the maximum sentence for Count Three. (AA 595, 598).

but not all sentencing factors is Rule 11 error.[8] Dávila's arguments are akin to requiring the court to use Rule's 11 wording verbatim, or else incur in Rule 11 error. That is not the law of this Court.

Here, the court advised Dávila that prior to determining sentence, it was required to consider both the guidelines and the sentencing factors. (AA 628-29). Dávila said he understood. (*Id*.). And given the trajectory of the case, which included two *Lafler/Frye* hearings and the fact Dávila was a previous felon that had pleaded guilty and was sentenced in Federal Court, his statements to the court are binding. *Chambers*, 710 F.3d at 29 ("A defendant's statements during a change-of-plea colloquy out to be binding on him in the absence of good cause to disregard them.").

Even assuming error, Dávila cannot show prejudice. Rule 11 error alone is not sufficient for a remand. *United States v. Urbina-Robles*, 817 F.3d 838, 846 (1st Cir. 2016) (determining no plain error when court failed to mention the guidelines or sentencing factors at change-of-plea colloquy

---

[8] While Dávila cites *Rita v. United States*, 511 U.S. 338 (2007), *Kimbrough v. United States*, 552 U.S. 90 (2007), and *United States v. Texeira-Nieves*, 23 F.4th 48 (1st Cir. 2022) in an attempt to argue the court's Rule 11 colloquy was insufficient (AB 47-48), none of those cases dealt with the adequacy of the court's Rule 11 colloquy and instead focused on sentencing claims.

because appellant could not show prejudice). Dávila cannot show that there was a reasonable probability he would not have entered the plea had the court given a more thorough explanation of the guidelines, departures, or the sentencing factors.

Dávila was aware of the advisory nature of the guidelines. At the change of plea, the court advised Dávila that the sentencing judge retained the authority to impose any sentence up to the maximum allowed by law. (AA 624). Moreover, Dávila's plea agreement, which he stated that fully discussed with this attorney (AA 623), set forth that the sentencing guidelines were advisory. (AA 596). Furthermore, both Dávila and his attorney acknowledged that they discussed the guidelines and every portion of the plea agreement. (AA 605).

Dávila's argument also ignores the idiosyncrasies of his past and the plea agreement to which he pleaded guilty. This was Dávila's second time pleading guilty, as Dávila already pleaded guilty pursuant to a plea agreement in his first federal case. (*See* Crim. Case No. 09-173, DE 2322). And the plea agreement which Dávila signed explicitly and implicitly recognized the advisory nature of the guidelines. The plea agreement submitted the parties' "advisory Guidelines calculations" and Dávila's own sentencing

recommendation for ten years for Count Three was an upwardly variant request to the statutory maximum and was higher than his eventual 77-96 month guideline range. (*See* AA 597-98, SA 652). To say he was not aware of the advisory nature of the guidelines and the ability of the court to fashion sentences outside the guidelines is belied by the terms of his plea agreement.[9]

Dávila has failed to develop a plausible argument that he would not have pleaded guilty had the court explained the sentencing guidelines or the sentencing factors in greater detail. "Nor does he give any account as to why, but for the District Court's error, he might have given up the substantial benefit that he received by pleading guilty." *Urbina-Robles*, 817 F.3d at 846.[10]

---

[9] Dávila's characterization of the guidelines as "merely advisory" also misses the mark. While true the guidelines are no longer mandatory and in fact advisory, they are still an indispensable part of federal sentencing. As the Supreme Court has explained, the sentencing guidelines are the starting point and initial benchmark of all federal sentencing proceedings, and the district court must begin the analysis with the guidelines. *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016). The Court noted that the guidelines are the "framework for sentencing" and "anchor" the court's discretion. *Id*.

[10] Dávila's requested prayer for relief would subject him to all nine counts in the indictment, including the four carjackings and two § 924(c) brandishing counts that were dismissed pursuant to the plea agreement.

Dávila has failed to show any prejudice and this Court need not set aside his

knowing and voluntary guilty plea.[11]

---

[11] Even if this Court were to consider Dávila's Rule 11 arguments preserved and determine the district court and magistrate judge violated Rule 11, the government's harmlessness arguments are the same arguments showing why Dávila cannot show prejudice.

**II.**   **Even if this Court were to agree that Dávila's plea should be vacated, this Court would not have jurisdiction to review the district court's order denying suppression.**

**Issue**

Without any legal authority, Dávila claims that if this Court were to vacate his guilty plea, it should also review and vacate the district court's denial of his motion to suppress. (AB 58-61).

**Standard of Review**

This Court should dismiss this issue because it lacks jurisdiction to consider the district court's suppression order. *See* 1st Cir. R. 27.0(c).

**Discussion**

Dávila's attempt to seek review of the order denying his motion to suppress fails. If this Court were to agree that there was reversible error in his plea, the proper course of action would be to remand the case to the district court for further proceedings. At that juncture, Dávila could either choose to plead guilty or proceed to trial. Only after the entry of judgment could Dávila potentially appeal the district court's denial of his motion to suppress.[12]

_____

[12] And even then, a suppression order is not always appealable. The entry of an unconditional guilty plea waives the right to challenge suppression

This Court lacks jurisdiction to consider the court's denial of Dávila's motion to suppress as part of this appeal, even if Dávila succeeds on his Rule 11 claim. Dávila's attempt to seek backdoor review of the suppression order as part of this appeal is treating this issue as an interlocutory one. The district court's suppression order is not immediately appealable. *See United States v. Moller-Butcher*, 723 F.2d 189, 191 (1st Cir. 1983) (appeal from denial of motion to suppress evidence not immediately appealable). A defendant may not appeal the denial of a motion to suppress on an interlocutory basis. *See United States v. Cunningham,* 113 F.3d 289, 295 (1st Cir. 1997) (only the government may file an interlocutory appeal from suppression order; defendant has no right to interlocutory appeal) (citing 18 U.S.C. § 3731). Nor does Dávila acknowledge the procedural posture of his case should he succeed on his Rule 11 claim. Review of the district court's suppression order

---

orders. *United States v. Casiano-Santana*, 1 F.4th 100, 101 (1st Cir. 2021). The only way Dávila could seek future review of the suppression order would be to proceed to trial or to enter a conditional guilty plea preserving his right to challenge the suppression order on appeal. *See* Fed. R. Crim. P. 11(a)(2). Nothing in this footnote should be interpreted as the government agreeing to consider further plea negotiations or a conditional plea offer should the case be remanded. After all, a defendant has no right to be offered a plea. *Frye*, 566 U.S. at 148.

is inappropriate and premature in the event this Court were to find reversible Rule 11 error.

Lastly, if this Court agrees with the government that Dávila's plea should not be vacated, his unconditional guilty plea precludes review of the district court's suppression order. *See Casiano-Santana*, 1 F.4th at 101. Under either scenario, Dávila's attempt to review the suppression order in this appeal fails.

### III. The waiver of appeal bars Dávila's challenge to the standard conditions of supervised release.

**Issue**

Dávila claims that even if his appeal waiver is enforceable, this Court should nonetheless remand for resentencing because the district court imposed standard conditions of supervised release without orally pronouncing them at sentencing. (AB 61-64).

**Standard of Review**

A waiver of appeal is binding when (a) "the written plea agreement signed by the defendant contains a clear statement elucidating the waiver and delineating its scope," (b) the district court "inquired specifically at the change-of-plea hearing into any waiver of appellate rights," and (c) denial of the right to appeal would not work a miscarriage of justice. *United States v. Teeter*, 257 F.3d 14, 24-25 (1st Cir. 2001). The miscarriage of justice exception should be applied "sparingly and without undue generosity" in only the most "egregious cases." *Teeter*, 257 F.3d at 25-26. This exception is "demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing garden-variety claims of error." *Id*. at 26. To successfully invoke the miscarriage of justice exception, a

"garden-variety error will not suffice," rather there must be, "at a bare minimum, an increment of error more glaring than routine reversible error." *Chambers*, 710 F.3d at 31 (internal quotation marks omitted).

## Discussion

Dávila's waiver of appeal bars this claim. As part of his plea agreement, Dávila agreed to waive his right to appeal, including any challenge to the conditions of his supervised release. (AA 599). Because the district court imposed a 180-month sentence, the waiver was triggered and Dávila's claim should be dismissed. While Dávila acknowledges his appeal waiver, he nonetheless fails to apply this Court's three-part *Teeter* test for evaluating whether a waiver is enforceable. This claim could be dismissed on that basis alone. *United States v. Bey*, 825 F.3d 75, 83 (1st Cir. 2016) (explaining that a "defendant who waives his right to appeal and thereafter attempt to avoid the effect of the waiver must confront the waiver head-on").

Dávila's waiver of appeal was both knowing and voluntary, thereby satisfying the first two prongs of the *Teeter* test. The plea agreement signed by the Dávila clearly set forth the terms of the waiver and its scope. Specifically, the waiver stated that Dávila "knowingly and voluntarily" agreed to waive "the right to appeal any aspect of this case's judgment and

sentence, including but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the terms and conditions of supervised release." (AA 599). Moreover, at the change-of-plea hearing, the magistrate judge explained the waiver of appeal provision and Dávila said he understood. (AA 630). "No more was exigible." *United States v. Miliano*, 480 F.3d 605, 608 (1st Cir. 2007).

Nor would enforcement of the waiver of appeal provision result in a miscarriage of justice. While the district court did not mention the standard or mandatory conditions at the sentencing hearing, this was not error, much less "an increment of error more glaring that routine reversible error." *Chambers*, 710 F.3d at 31. This Court has previously explained that "[d]efendants are deemed to be on constructive notice for mandatory and standard conditions announced for the first time in a written judgment, and therefore have no right to-be-present claim with respect to any such condition." *United States v. Sepulveda-Contreras*, 466 F.3d 166, 169 (1st Cir. 2006). Despite citing to *Sepulveda-Contreras* in his brief, (AB 37), Dávila nonetheless claims the district court had to adhere to a minimum process like the one this Court set forth in *United States v. Nardozzi,* 2 F.4th 2 (1st Cir.

2021) implying *Sepulveda-Contreras's* constructive notice is somehow insufficient. (AB 62-63). But that is wrong.

In *Nardozzi*, the appellant challenged the district court's adoption of certain mandatory and special conditions of supervised release by reference. 2 F.4th at 8. During Nardozzi's sentencing hearing, the district court referenced the mandatory and special conditions set forth in the PSR during sentencing, but did not list each of those conditions orally at sentencing. *Id*. In affirming the sentence, this Court noted a district court "need not orally describe each of the non-standard conditions at sentencing" because adopting the written list that proposed those conditions provided the defendant with sufficient notice. *Id*. *Nardozzi* did not impose a new burden for standard conditions nor state that failure to mention them at sentencing constituted reversible error. In fact, the case did not involve a challenge to any standard conditions.

In short, there was no reversible error in the district court's failure to mention the standard conditions at Dávila's sentencing. This Court's case law provides that defendants are on constructive notice of both the mandatory and standard conditions. *Sepulveda-Contreras*, 466 F.3d at 169. And this makes sentence. The standard conditions of supervised release "are

so uniformly imposed that they have become boilerplate in federal courts." *United States v. Tulloch*, 380 F.3d 8, 14 n.8 (1st Cir. 2004). The district court did not err.

Even if the district court should have referenced the mandatory and standard conditions, Dávila has failed to show how enforcement of the waiver of appeal would work a miscarriage of justice. Dávila has failed to show how the court's alleged error would have been more glaring that reversible error. *Chambers*, 710 F.3d at 31. And even if it was error, Dávila cannot show any prejudice. As a federal felon, Dávila was aware of mandatory, standard, and special conditions of supervised release, as they were included in his previous federal judgment. (DE 2787 of Criminal Case No. 09-173). In fact, Dávila was on supervised release when he committed the instant offenses. Dávila, therefore, had notice of such conditions by virtue of his previous federal judgment and could have argued against the standard conditions prior to sentencing if he so desired. "The short of it is that defendant has not shown any error, let alone the glaring stain of error needed to fuel a miscarriage of justice finding." *Chambers*, 710 F.3d at 31.

There is one loose end. Even if this Court were to set aside the waiver of appeal provision and consider Dávila's claim, the claim below was not

preserved and would be reviewed for plain error only. *United States v. Cruz,* 49 F.4th 646, 651 (1st Cir. 2022) (explaining unpreserved challenges to standard conditions of supervised release are reviewed for plain error) Dávila's failure to acknowledge that this claim was not preserved waives the claim. By treating his claim as preserved (AB 37), Dávila fails to argue the four prongs of plain error. *United States v. Pabon*, 819 F.3d 26, 29 (1st Cir. 2016) (explaining a defendant waives his claims when "he has made no attempt to satisfy the four-part plain error burden"). And by failing to prove plain error, Dávila waives his claim. *Id*. Whether this Court enforces the waiver of not, Dávila is not entitled to a remand for resentencing.

## CONCLUSION

Based on the forgoing, this Court should affirm Dávila's conviction and sentence.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 7th day of October, 2024.

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant U.S. Attorney
Chief, Appellate Division

/s/ Julia M. Meconiates
Assistant U.S. Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## Certificate of Compliance With Rule 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☑ this brief contains <u>7,875</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), *or*

    ☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☑ this brief has been prepared in a proportionally spaced typeface using <u>Book Antiqua</u> in <u>14 point</u>, *or*

    ☐ this brief has been prepared in a monospaced typeface using _____ with _____.

Dated: 10/7/2024                        /s/ Julia M. Meconiates
                                        Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 7, 2024, I electronically filed the brief with the Clerk of the Court using the CM/ECF system, which will send notification to counsel for appellant.

/s/ Julia M. Meconiates
Assistant U.S. Attorney