No. 23-1900

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

United States,

*Appellee,*

v.

Alex David Davila-Olivo,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Puerto Rico
No. 3:19-cr-716-FAB
Hon. Francisco A. Besosa

_____

**DEFENDANT-APPELLANT'S REPLY BRIEF**

_____

W. Miles Pope
Goddard Pope PLLC
967 E. Parkcenter Blvd. No. 1010
Boise, ID 83706
(208) 329-5671
miles@goddard-pope.com
First Circuit Bar No. 1208369

*Attorneys for Appellant*
Alex David Davila-Olivo

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

ARGUMENT ........................................................................... 1

I.  Mr. Davila's guilty plea is invalid because it was unknowing
    and coerced. ................................................................... 1

    A.  The district court violated rule 11's prohibition on judicial
        involvement in plea discussions. ........................................... 2

        1.  It is irrelevant that the court's coercive comments
            occurred during a *Lafler* hearing. ................................... 4

        2.  The court's comments violated rule 11's bar on judicial
            involvement in plea discussions. ..................................... 7

        3.  The district court affirmatively encouraged the parties
            to settle the case. .................................................. 11

    B.  The magistrate court violated rule 11 during the change of
        plea hearing, misleading Mr. Davila about the consequences
        of pleading guilty. ....................................................... 12

        1.  The magistrate violated the letter of rule 11(b)(1)(M).
            ..................................................................... 13

        2.  The magistrate violated rule 11(b)(1)(M)'s overarching
            command. ............................................................ 15

    C.  The court's rule 11 violations were not harmless, regardless
        of whether the Court applies plain error review. ......................... 16

    D.  This issue is preserved. ................................................. 20

II. This Court can and should reverse the district court's
    suppression order. ........................................................... 22

III.   Mr. Davila's standard supervised-release conditions must be reversed. ....................................................................... 26

CONCLUSION ........................................................................ 32

CERTIFICATE OF COMPLIANCE ....................................... 33

CERTIFICATE OF SERVICE ................................................. 34

# TABLE OF AUTHORITIES

## Cases

*City of Providence v. Barr*, 954 F.3d 23 (1st Cir. 2020) ..........................15

*In re United States*, 32 F.4th 584 (6th Cir. 2022) ..................................10

*Missouri v. Frye*, 132 S. Ct. 1399 (2012) ................................................7

*Tollett v. Henderson*, 411 U.S. 258 (1973) ............................................28

*U.S v. Bruce*, 976 F.2d 552 (9th Cir. 1992) ..............................................8

*U.S v. Paul*, 634 F.3d 668 (2d Cir. 2011) ................................................13

*U.S. v. Baker*, 489 F.3d 366 (D.C. Cir. 2007) ..................................20, 23

*U.S. v. Begay*, 497 F. Supp. 3d 1025 (D.N.M. 2020) ...............................5

*U.S. v. Benitez*, 541 F. App'x 961 (11th Cir. 2013) ...............................27

*U.S. v. Bierd*, 217 F.3d 15 (1st Cir. 2000) ...............................4, 6, 8, 9

*U.S. v. Bradley*, 455 F.3d 453 (4th Cir. 2006) .........................................6

*U.S. v. Braxton*, 784 F.3d 240 (4th Cir. 2015) ........................................4

*U.S. v. Cano-Varela*, 497 F.3d 1122 (10th Cir. 2007) ...........................21

*U.S. v. Casallas*, 59 F.3d 1173(11th Cir. 1995) ......................................9

*U.S. v. Castro-Vazquez*, 802 F.3d 28 (1st Cir. 2015) ............................29

*U.S. v. Chambers*, 710 F.3d 23 (1st Cir. 2013) ................. 2, 14, 17, 18, 19

*U.S. v. Cone*, 323 F. App'x 865 (11th Cir. 2009) ......................................6

*U.S. v. Conley*, 89 F.4th 815 (10th Cir. 2023) ........................................26

*U.S. v. Davila*, 133 S. Ct. 2139 (2013) ..................................................24

*U.S. v. Dominguez-Benitez*, 542 U.S. 74 (2004) ...............................20, 22

*U.S. v. Duplessis*, 2023 U.S. App. LEXIS 27980 (6th Cir. Oct. 19, 2023) ........................................................................................28

*U.S. v. Hayden*, 102 F.4th 368 (6th Cir. 2024) ......................................36

*U.S. v. Kraus*, 137 F.3d 447 (7th Cir. 1998) ............................................21

*U.S. v. Montoya*, 82 F.4th 640 (9th Cir. 2023)........................................36

*U.S. v. Nardozzi*, 2 F.4th 2 (1st Cir. 2021) .....................................34, 35

*U.S. v. Ortiz-Garcia*, 665 F.3d 279 (1st Cir. 2011) ...............................25

*U.S. v. Pena*, 676 F. Supp. 3d 978 (D.N.M. 2021)....................................4

*U.S. v. Rankins*, 675 F. App'x 231 (4th Cir. 2017) ................................20

*U.S. v. Rodriguez*, 197 F.3d 156 (5th Cir. 1999)....................................21

*U.S. v. Rodriguez*, 919 F.3d 629 (1st Cir. 2019) ...................................32

*U.S. v. Scott*, 877 F.3d 30 (1st Cir. 2017)...............................................29

*U.S. v. Sepulveda-Contreras*, 466 F.3d 166 (1st Cir. 2006)..33, 34, 35, 36

*U.S. v. Singletary*, 984 F.3d 341 (4th Cir. 2021) ...................................31

*U.S. v. Slane*, 2015 U.S. Dist. LEXIS 19867 (W.D. Pa. Feb. 19, 2015)....5

*U.S. v. Snipe*, 515 F.3d 947 (9th Cir. 2008) ...........................................27

*U.S. v. Tulloch*, 380 F.3d 8 (1st Cir. 2004) ......................................35, 36

*U.S. v. Velazquez*, 855 F.3d 1021 (9th Cir. 2017) .............................11, 12

*U.S. v. Werker*, 535 F.2d 198 (2d Cir. 1976) .............................................8

*Whitfield v. Fajardo*, 564 F.3d 40 (1st Cir. 2009)..................................26

## Statutes

18 U.S.C. § 3553(a) ..............................................................14, 15, 16, 17

## Rules

Fed. R. Crim. P. 11(b)(1)(M).................................. 1, 13, 14, 15, 16, 17, 18

Fed. R. Crim. P. 51(b)............................................................................29

# ARGUMENT

## I. Mr. Davila's guilty plea is invalid because it was unknowing and coerced.

The government pursues a four-pronged defense of the validity of Alex Davila's guilty plea, arguing that 1) the district court didn't impermissibly involve itself in plea discussions; 2) the magistrate court didn't violate rule 11(b)(1)(M) of the Federal Rules of Criminal Procedure; 3) any error was harmless; and 4) Mr. Davila's challenge to the plea's validity is, in any event, unpreserved.

For the reasons explained here, these arguments all fail to change the bottom line in this case. The bottom line is that Mr. Davila was railroaded into a guilty plea by a court that, ***first***, held a lengthy hearing that was styled as a *Lafler* hearing but was in fact aimed solely at emphasizing to Mr. Davila the benefits of pleading guilty and the costs of going to trial; ***next***, granted a trial continuance while noting the extra time would give defense counsel a further chance to "twist your client's arm" into pleading guilty; and, ***finally***, when Mr. Davila had been coerced into pleading guilty, failed to tell him of the court's obligation to calculate the sentencing guidelines range and to consider possible departures, thereby violating rule 11(b)(1)(M) and failing to

place the sentencing guidelines in "meaningful perspective," *U.S. v. Chambers*, 710 F.3d 23, 28 (1st Cir. 2013).

### A. The district court violated rule 11's prohibition on judicial involvement in plea discussions.

Mr. Davila's opening brief explained why the district court's conduct in this case violated rule 11's bright-line rule against judicial involvement in plea negotiations. In a nutshell: before Mr. Davila had decided to plead guilty—indeed, at a time when he had professed his desire to go to trial—the court convened a *Lafler* hearing at which it 1) told Mr. Davila he faced severe punishment if he went to trial (App.-564); 2) contrasted that severe punishment with the comparatively lenient punishment he would get if he pled guilty (*id.*); and 3) affirmatively encouraged the parties to negotiate a resolution of the case (App.-530).

The government disagrees, arguing that the district court's decision to inject itself into Mr. Davila's plea negotiations was not error. It says the court's commentary on plea negotiations was not error because it "occurred in the context of a *Lafler/Frye* hearing" that Mr. Davila's counsel requested (AB at 21). In any event, the government argues, the court could not have erred because it "never commented on

what it perceived would be the appropriate penalty for [Mr.] Davila" nor did it "threaten [him] with a higher sentence if he exercised his right to trial (AB at 22). And, lastly, while the government appears to concede that it is inappropriate for courts to affirmatively encourage continued plea negotiations, the government argues that what Mr. Davila's opening brief characterizes as the court's having affirmatively encouraged resolution of the case—the district judge's asking the government whether it would "receive another offer" and, when the government said it would, then urging defense counsel to continue negotiating—was, in fact, a simple procedural decision by the court to "set a pretrial conference or change-of-plea hearing in 30 days so [Mr.] Davila could discuss the matter and decide how he wished to proceed" (AB at 21).

These arguments fail because 1) *Lafler* hearings do not give courts license to involve themselves in plea discussions; 2) rule 11's bar on judicial involvement in plea negotiations extends—beyond explicit threats of punishment and explicit commentary on what a court views as the appropriate penalty—to "*implicit* . . . pressure to settle criminal cases," *U.S. v. Bierd*, 217 F.3d 15, 21 (1st Cir. 2000) (emphasis added);

and 3) notwithstanding the government's protestations to the contrary, the district court's colloquy with counsel about ongoing plea negotiations constituted impermissible encouragement to settle Mr. Davila's case.

### 1. It is irrelevant that the court's coercive comments occurred during a *Lafler* hearing.

*First*, there is no authority—and the government cites none—for the proposition that courts have more leeway to make coercive comments when they do so "in the context of a *Lafler/Frye* hearing" (AB at 21). As Mr. Davila explained in his opening brief, *Lafler* hearings serve a limited, prophylactic function (*see* OB at 2 n.2). Their sole purpose is to "help ensure against late, frivolous, or fabricated claims" that defense counsel failed to convey a formal plea offer to their client (OB at 44 (quoting *U.S. v. Braxton*, 784 F.3d 240, 247 (4th Cir. 2015))). For this reason, "the inquiry that a court may conduct at a *Lafler/Frye* hearing is extremely limited," *U.S. v. Pena*, 676 F. Supp. 3d 978, 981 (D.N.M. 2021), and conscientious district courts appropriately take great pains to develop highly truncated and targeted *Lafler* colloquies that elicit no more than that the government has made a formal plea offer, that defense counsel has reviewed it with their client, and that

their client intends to reject it, *see, e.g.*, *U.S. v. Begay*, 497 F. Supp. 3d 1025, 1085 (D.N.M. 2020) (limiting *Lafler* hearing to "determin[ing] the simple factual question whether Begay's counsel communicated the United States' plea offer"); *U.S. v. Slane*, 2015 U.S. Dist. LEXIS 19867, at *60 n.14 (W.D. Pa. Feb. 19, 2015) (ensuring *Lafler* questions are "limited in scope" to whether government has made formal plea offer, whether defense counsel has communicated plea offer, and whether defendant rejected it).

Given this law, the government is wrong to suggest the district court gets more leeway because its remarks occurred in the "context of a *Lafler/Frye* hearing" (AB at 21). In reality, rule 11's prohibition on judicial involvement in plea negotiations applies with equal strictness whenever the defendant has not yet decided to plead. While district courts may evaluate and discuss plea agreements once they have been reached by the parties, "[p]rior to that time, a court should not offer comments touching upon proposed or possible plea agreements. . . ." *U.S. v. Cone*, 323 F. App'x 865, 870 (11th Cir. 2009); *see Beird*, 217 F.3d at 20 ("[T]he interests of justice are best served if the judge remains

aloof from *all discussions* preliminary to the determination of guilt."
(emphasis added)).

What's more, the fact that Mr. Davila's defense counsel requested
the *Lafler* hearing does not help the government. The suggestion that a
rule 11 violation is less serious if the defendant's counsel participated in
it "totally ignores the applicable standard for determining the effect on
substantial rights in cases involving Rule 11 violations." *U.S. v.
Bradley*, 455 F.3d 453, 463 (4th Cir. 2006). In analyzing a rule 11
violation, it is, at best, irrelevant "whether defense counsel participated
in the error." *Id*. Instead, the only issue is whether prejudicial error
occurred.

If anything, the fact that Mr. Davila's counsel requested the *Lafler*
hearing serves to underscore that its true purpose was to induce Mr.
Davila to plead guilty. Because the sole function of a *Lafler* hearing is to
foreclose a prospective avenue for a defendant's seeking postconviction
relief—to, in the Supreme Court's words, "help ensure against late,
frivolous, or fabricated [postconviction] claims"—loyal defense counsel
has no business requesting a *Lafler* hearing. *Missouri v. Frye*, 132 S. Ct.
1399, 1408-09 (2012). That defense counsel did so here strongly

suggests that the real purpose of the *Lafler* hearing was to induce Mr. Davila to plead guilty.

To summarize, the fact that the bulk of the court's coercive comments occurred during a *Lafler* hearing does not, in any way, mitigate the court's conduct or rescue its comments from error. And the fact that the hearing was held at defense counsel's behest serves not to inoculate it against claims of error, but to underscore that it was a fundamentally coercive hearing that should never have taken place and that warrants reversal of Mr. Davila's convictions and a remand to allow him to withdraw his guilty plea.

### 2. The court's comments violated rule 11's bar on judicial involvement in plea discussions.

**Second**, the court's comments at the *Lafler* hearing violated rule 11's bar on judicial involvement in plea negotiations. In arguing to the contrary, the government appears to interpret rule 11 to only prohibit courts from describing what they think would be the "appropriate penalty" and from "threaten[ing]" defendants with more severe consequences should they go to trial (AB at 22).

But that's simply not the applicable standard. As Mr. Davila pointed out in his opening brief, rule 11 forbids judges from taking any

"part *whatever* in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty." *U.S v. Bruce*, 976 F.2d 552, 558 (9th Cir. 1992) (citing *U.S. v. Werker*, 535 F.2d 198, 201 (2d Cir. 1976) (emphasis added)). The government purports to find its narrower rule in this Court's decision in *Bierd* (*see* AB at 22-23). But that's a sheer misreading of *Bierd*. After all, one of *Bierd*'s examples of improper judicial involvement in plea negotiations comes from the Eleventh Circuit's decision in *U.S. v. Casallas*. *See Bierd*, 217 F.3d at 20 (citing 59 F.3d 1173, 1177 (11th Cir. 1995)). And *Casallas* is a case in which the Eleventh Circuit explained that a district court can violate rule 11 simply by giving an "accurate assessment of the guideline[s]" in the course of "implicitly contrasting" the sentence the defendant would receive after trial with the sentence he'd receive if he pled guilty. *Casallas*, 59 F.3d at 1177-1178.[1]

---

[1] The government seeks to distinguish *Casallas* by arguing that it involved a district court's "threaten[ing] [the defendant] with a higher sentence" (AB at 23). But the district court's comments in *Casallas* were no more threatening than the court's comments here. The district court in *Casallas* simply recited the fact that if the defendant went to trial, he would face a 15 year mandatory minimum, whereas if he pled guilty, he would face "a minimum mandatory of ten, which is a lot better than fifteen." 59 F.3d at 1176. This side-by-side comparison is no different

That is strikingly similar to what happened here. Consider, for example, how the district court summarized the stakes of Mr. Davila's choice:

> *The Court*: So, Mr. Davila . . . instead of 490 to 593 months [if you go to trial], the Government's offer now is anything between 248 and 270 months, depending on your criminal history category.

(App.564). This comment not only presupposed that if Mr. Davila went to trial he would have been convicted—and presupposed that the court would accept the plea agreement if Mr. Davila agreed to it[2]—but it also set up the precise contrast between the high sentence Mr. Davila would receive after trial and the (significantly lower) sentence he would receive after pleading guilty. This is precisely what courts such as *Casallas* have recognized rule 11's anti-coercion rule forbids.

Or consider the process by which the district court built up to this comparison. The court directed and encouraged the prosecutor to

---

than what the district court told Mr. Davila ("490 to 593 months" as compared to "between 248 and 270 months"). As in *Casallas*, the court here "implicitly contrast[ed]" a trial sentence with a plea sentence, which constitutes impermissible coercion. *Id.* at 1178. *Casallas* is not meaningfully distinguishable.

[2] *Cf. In re United States*, 32 F.4th 584, 593 (6th Cir. 2022) ("[W]hile plea negotiations are ongoing a district court is prohibited from commenting on a hypothetical plea agreement that it would or would not accept.").

describe the guidelines range Mr. Davila would face were he convicted of each count he was charged with (App.-530). And it also signaled that Mr. Davila would get a guidelines sentence if he went to trial (App.-538-39 ("Let's go with the guidelines"); App.-564 (telling Mr. Davila he'd get a guidelines sentence after trial but a (much lower) guidelines sentence if he pled)). By contrast, the court spent no time whatsoever reminding Mr. Davila of the presumption of innocence or noting that he could, of course, be acquitted after trial. "[T]he full picture [Mr. Davila] must have taken away from" this hearing, then, was that if he went to trial he would be convicted and he would be sentenced to dramatically more severe punishment than if he pled guilty. *U.S. v. Velazquez*, 855 F.3d 1021, 1039 (9th Cir. 2017). That violates rule 11's anti-coercion bar. *See id.* (finding judicial coercion—even in face of judge's "periodically stat[ing] that he was not interfering with the parties' negotiations"— where judge "elicited comments from the prosecutor on the deal's advantages" and suggested that the post-plea sentence would be substantially shorter).

### 3. The district court affirmatively encouraged the parties to settle the case.

***Finally***, the record rebuts the government's claim that the district court did not affirmatively encourage the parties to settle this case. Instead, as Mr. Davila's opening brief pointed out, at the *Lafler* hearing's close the district court pointedly asked the government if it "would . . . receive another offer" (App-562). And when the government said it would, the court turned to Mr. Davila's defense counsel and confirmed that he "understood" that he could continue negotiating Mr. Davila's case (App.562).

This colloquy amounted to the district court's direct intervention into plea negotiations. Coming on the heels of a lengthy hearing that emphasized the benefits of pleading guilty versus going to trial, the court's questions about the government's openness to a counteroffer— and the pointed way in which it confirmed defense counsel understood that fact—could only be understood as the court's encouragement of ongoing plea discussions. *Cf. Velazquez*, 855 F.3d at 1039 (finding that district court's lengthy hearing at which it emphasized benefits of pleading guilty was coercive even though the court "periodically stated that [it] was not interfering with the parties' negotiations"). In sum, the

court's conduct during the *Lafler* hearing violated rule 11's prohibition on judicial involvement in plea negotiations.[3]

**B. The magistrate court violated rule 11 during the change of plea hearing, misleading Mr. Davila about the consequences of pleading guilty.**

In addition to being coerced, Mr. Davila's plea was also unknowing because, during the change of plea hearing, the magistrate court violated both the letter of rule 11(b)(1)(M) and its overarching command to place the sentencing guidelines in "meaningful perspective," *U.S. v. Chambers*, 710 F.3d 23, 28 (1st Cir. 2013), meaning that Mr. Davila's reluctant guilty plea was made without knowledge of critical facts concerning the federal sentencing process. The government resists both of these points, but its arguments to the contrary fail.

---

[3] As did the court's later comment, at a status conference, that further continuing Mr. Davila's case would give trial counsel an opportunity to "twist your client's arm" (AA 590). Citing *U.S v. Paul*, 634 F.3d 668 (2d Cir. 2011), the government argues that this remark was irrelevant because Mr. Davila was present when the court made it. But *Paul* does not support this analysis. To the contrary, *Paul* involved an arguably coercive comment made by a judge at a *sealed* hearing—and the *Paul* court *still* analyzed that comment under rule 11(c)(1)'s standards to determine if it rose to the level of improper judicial coercion to plead. *See id.* at 672.

### 1. The magistrate violated the letter of rule 11(b)(1)(M).

***First***, the government's argument that the magistrate complied with the letter of rule 11(b)(1)(M) flunks the literal terms of that rule. Rule 11(b)(1)(M) provides that before a court may accept a plea it must "inform the defendant of, and determine that the defendant understands . . . the court's obligation [at sentencing] to calculate the applicable sentencing-guideline range *and* to consider that range, [*and to consider*] possible departures from that range" (emphases added). The government says the magistrate "sufficient[ly]" complied with this rule by telling Mr. Davila that, at sentencing, the court would be "required to consider the guidelines"  (AB at 28).

The problem with this argument is that if merely telling defendants of a court's obligation "to consider the guidelines"—without separately telling them of the court's obligation to calculate the sentencing guidelines range and to consider possible departures—is "sufficient" to satisfy rule 11(b)(1)(M), then large parts of that rule would be reduced to surplusage. *Cf. City of Providence v. Barr*, 954 F.3d 23, 37 (1st Cir. 2020) (courts should avoid interpretations that "render[]

words or phrases either meaningless or superfluous"). The government's interpretation simply deletes the following portions of that rule:

> [Courts taking a plea must] inform the defendant of, and determine the defendant understands . . . the court's obligation ~~to calculate the applicable sentencing-guidelines range and~~ to consider [the sentencing-guidelines] range, ~~possible departures under the Sentencing Guidelines,~~ and other sentencing factors under 18 U.S.C. § 3553(a)

The government cites no authority in support of this construction, and the rule against surplusage strongly counsels against it.

The government's argument that the magistrate complied with rule 11(b)(1)(M)'s requirement to inform Mr. Davila of the "other sentencing factors under 18 U.S.C. § 3553(a)" is equally unpersuasive. The government faults Mr. Davila for "fail[ing] to cite any authority showing inclusion of some but not all sentencing factors is Rule 11 error" (AB at 28-29). But that proposition straightforwardly follows from rule 11(b)(1)(M)'s plain text. And, ironically—even while it criticizes Mr. Davila for resting solely on rule 11's plain text—the government identifies no case holding that a district court complies with rule 11(b)(1)(M) by listing a selective subset of the § 3553(a) factors, but declining, as the magistrate did here, to describe the remaining factors, including crucially important sentencing factors like

the history and characteristics of the defendant and the need for the sentence to reflect just punishment. Here, too, the court violated rule 11(b)(1)(M).

Notwithstanding the government's arguments, the magistrate expressly violated rule 11(b)(1)(M) in multiple respects.

### 2. The magistrate violated rule 11(b)(1)(M)'s overarching command.

***Second***, the magistrate also violated rule 11(b)(1)(M)'s overarching command to place the guidelines in "meaningful perspective" *Chambers*, 710 F.3d at 28. The government caricatures Mr. Davila's position—that to put the guidelines into meaningful perspective the magistrate needed, at minimum, to convey to Mr. Davila that the sentencing guidelines are one factor among many that a sentencing court must consider in arriving at a sentence sufficient but no greater than necessary to satisfy § 3553(a)'s purposes—as a bid to require the magistrate "to provide a sentencing primer at the change-of-plea hearing" (AB at 16).

Not so. To satisfy *Chambers*'s requirement, a magistrate needn't cite any cases, exhaustively catalog the current state of federal sentencing, or even use any particular words (like the words "advisory"

or "not presumed reasonable") (*cf.* AB at 28 (caricaturing Mr. Davila's position as interpreting rule 11(b)(1)(M) to require the magistrate to use the word "advisory")). Rather, all a magistrate must do is explain to the defendant that the guidelines are but one sentencing factor among many and that they are to be considered—alongside all the other § 3553(a) factors—with an eye toward determining the parsimonious sentence in the defendant's case. This minimal explanation is critical to placing the guidelines in meaningful perspective because, absent this explanation, a court's rule 11(b)(1)(M) advisements simply do not give any real insight into how the guidelines are supposed to work. The magistrate failed to do that here and his rule 11(b)(1)(M) advisements in this case accordingly violated *Chambers*'s requirement that the rule 11(b)(1)(M) colloquy must, at minimum, place the guidelines in "a meaningful perspective." *Chambers*, 710 F.3d at 28.

### C. The court's rule 11 violations were not harmless, regardless of whether the Court applies plain error review.

The government next argues that any improper judicial involvement in Mr. Davila's plea discussions, or other rule 11 error, was harmless because Mr. Davila did not immediately plead guilty to the

charges after the *Lafler* hearing, but instead took up the district court's invitation to pursue further negotiations that later culminated in a guilty plea (*see* AB at 15, 24-26).

This argument fails even under a plain error review—i.e., even if Mr. Davila "must show a reasonable probability that, but for the error, he would not have entered the plea." *U.S. v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004).[4] **First**, the nature of the court's involvement in Mr. Davila's plea discussions itself establishes a reasonable probability that Mr. Davila would have gone to trial had the court not involved itself in those negotiations. Given the "inherently coercive" effect of judicial involvement in plea negotiations, *U.S. v. Baker*, 489 F.3d 366, 372 (D.C. Cir. 2007), "it will be rare that a clear violation of Rule 11's prohibition against judicial involvement in plea negotiations does not affect substantial rights." *U.S. v. Rankins*, 675 F. App'x 231, 235 (4th Cir. 2017); *see also U.S. v. Cano-Varela*, 497 F.3d 1122, 1133 (10th Cir. 2007) ("We agree . . . that errors such as these almost invariably affected the fairness and integrity of judicial proceedings' and affect

---

[4] As Mr. Davila's opening brief notes, the "reasonable probability" standard is a relatively easy burden to meet and does not require proof by so much as preponderance of the evidence (OB at 55).

substantial rights required to prove plain error"); *U.S. v. Rodriguez*, 197 F.3d 156, 160 (5th Cir. 1999) ("[I]t is difficult to imagine a situation in which the court would find a judge's participation in the plea negotiation process to be harmless given the inherent pressure on the defendant"); *U.S. v. Kraus*, 137 F.3d 447, 457 (7th Cir. 1998) ("[I]nsofar as judicial intervention in the negotiation of a plea agreement is concerned, the possibility of harmless error may be more theoretical than real."). Surely the court's conduct in this case—where it repeatedly emphasized the serious consequences of going to trial versus pleading guilty and affirmatively encouraged the parties to continue negotiating for a resolution—does not qualify as one of those rare cases where the court's involvement in plea negotiations was harmless.

**Second**, the entire record of Mr. Davila's case further shows that the court's conduct affected his substantial rights. *See Dominguez-Benitez*, 542 U.S. at 83 (look to whole record to determine if rule 11 violation was prejudicial). The government says otherwise, pointing out that—despite the court's intervention—Mr. Davila did not immediately accept the government's offer, almost went to trial, and only accepted a different, more favorable, offer nine months after the *Lafler* hearing

(AB at 25). The government suggests this means that Mr. Davila "did not plead guilty because of judicial participation in the plea negotiation process, but rather because he was able to secure a more beneficial plea offer nine months later" (AB at 26).

There is, of course, another possibility, which is that Mr. Davila was *extremely close* to going to trial, and it took a coordinated campaign—including, critically, the court's involvement in plea negotiations—to wear him down enough to plead guilty. The record supports that this is what actually happened. The overall record shows that Mr. Davila—a man with significant cognitive limitations who was highly susceptible to influence (*see* SAP 181 ¶ 106)—pushed to go to trial and only pled guilty after the court emphasized the benefits of doing so, encouraged defense counsel and the government to continue negotiating, and granted a lengthy continuance which it stated on the record would allow defense counsel to "twist [their] client's arm" into pleading guilty (App.-590). Even after he was worn down and pleaded guilty at a hearing where the defense-protective function of federal sentencing was never explained to him, Mr. Davila continued to try to go to trial. He directed the Federal Defenders to withdraw because he

felt they had coerced him into pleading guilty (SAP.-129). And, at sentencing, replacement CJA counsel sought to withdraw his guilty plea as well (App.-642-643). Considering Mr. Davila's clear and persistent reluctance to plead guilty against the "inherently coercive" effect of judicial involvement in plea discussions, *Baker*, 489 F.3d at 372, there is—at minimum—a reasonable probability that Mr. Davila would not have pled guilty had the district court not injected itself into plea discussions and had the magistrate properly advised him of the consequences of his guilty plea.

Even under the heightened burden of plain-error review, Mr. Davila establishes that the court's conduct in this case affected his substantial rights.

### D. This issue is preserved.

Lastly, though the Court needn't reach this question if it agrees with Mr. Davila that the district court's involvement in plea negotiations in this case rises to the level of plain error, Mr. Davila's challenge to the rule 11 violations is preserved both because he moved to withdraw his guilty plea at sentencing and because the pressure he was under to plead guilty presents "extraordinary circumstances" that

"should allow [his] claim to be judged under the harmless error standard" (OB at 51 (quoting *Davila*, 133 S. Ct. at 2150)).

The government's answering brief does not address Mr. Davila's "extraordinary circumstances" argument and instead focuses only on his argument that he preserved his rule 11 challenges by moving to withdraw his guilty plea. According to the government, Mr. Davila's motion to withdraw his guilty plea was inadequate to preserve these challenges because—while he stated that he was innocent and that his prior attorney had coerced him into pleading guilty—he did not "adequately put the court on notice that [he] would be pursuing a Rule 11 claim that the court coerced him into pleading guilty or that the court did not adequately explain the sentencing process during the change-of-plea hearing" (AB at 25).

Even if a motion to withdraw a guilty plea is insufficient, by itself, to preserve rule 11 violations, *cf. U.S. v. Ortiz-Garcia*, 665 F.3d 279, 285 (1st Cir. 2011) (defendant's motion "to withdraw his plea in the district court" suffices to preserve rule 11 issue on appeal), Mr. Davila's motion put the court on adequate notice of, at minimum, his judicial-coercion claim. In moving to withdraw Mr. Davila's guilty plea at sentencing,

Mr. Davila's counsel "state[d] for the record that [Mr. Davila] was coerced at the time of the change of plea hearing, that that hearing basically became a *Lafler/Frye* hearing, and after awhile he finally accepted responsibility because of undue pressure from the former attorney at that time" (App.643). Even if it was "imprecise," this motion put the district court on adequate notice of Mr. Davila's claim that he was coerced into pleading guilty and—through its reference to the *Lafler* hearing—that the court's conduct was at issue. *U.S. v. Conley*, 89 F.4th 815, 821 (10th Cir. 2023) (noting that "[a] sufficient objection may be 'imprecise'" (citation omitted)).

## II. This Court can and should reverse the district court's suppression order.

Mr. Davila's opening brief argued that—in the event the Court vacates his guilty plea—it should also reverse the district court's erroneous suppression order. The government's answering brief does not defend the district court's suppression order on the merits—and cannot, as that order is obviously predicated on the district court's brute misunderstanding of evidence law (a point the government does not contest). Instead, the government argues solely that this Court lacks jurisdiction to rule on Mr. Davila's appeal of that order, meaning that

this Court cannot correct the district court's mistake in the course of remanding this case.

The government's jurisdictional claim has to be wrong. Jurisdictional bars are nonwaivable, *see Whitfield v. Fajardo*, 564 F.3d 40, 44 (1st Cir. 2009) (lack of appellate jurisdiction is a nonwaivable defect that "federal courts have an omnipresent duty to take notice of"), yet appellate courts routinely hold that the government has waived its right to object to their considering suppression and other pretrial claims of error in unconditional guilty plea cases. In *U.S. v. Snipe*, for example, the Ninth Circuit considered the merits of the defendant's suppression appeal—notwithstanding that the defendant had entered an unconditional guilty plea—because "the government has waived any procedural bar to [the defendant's] appealing pre-conviction motions that might be associated with the entry of an unconditional guilty plea." 515 F.3d 947, 950 (9th Cir. 2008). Similarly, in *U.S. v. Benitez*, the Eleventh Circuit addressed the merits of a suppression issue even though it "recognize[d] that there is some question as to whether Benitez's *Alford* plea waived his right to appeal the suppression ruling," because "the government ha[d] not raised the issue of waiver" in its

answering brief. 541 F. App'x 961, 962 (11th Cir. 2013). These cases are impossible to square with the government's contention that an unconditional guilty plea deprives an appellate court of jurisdiction over a suppression issue.

Even more fundamentally, appellate courts—including this one—have in fact considered defense-initiated appeals of pretrial issues, including suppression issues, notwithstanding an unconditional guilty plea. In *U.S. v. Duplessis*, for example, the Sixth Circuit considered the defendant's appeal of the district court's denial of his motion to suppress despite the government's argument that "Duplessis waived this argument because he entered an unconditional guilty plea and did not preserve his right to appeal the court's suppression order." 2023 U.S. App. LEXIS 27980, at *5-6 (6th Cir. Oct. 19, 2023). Reasoning that "this type of 'waiver' argument [does not] rais[e] a jurisdictional defect that we must resolve before reaching the merits," the *Duplessis* Court went on to consider the suppression issue that the defendant had raised. *Id.* at *6. Similarly, in *U.S v. Castro-Vazquez*, this Court noted the general rule, announced by the Supreme Court in *Tollett v. Henderson*, 411 U.S. 258 (1973), that "an unconditional guilty plea

results in the waiver of errors preceding the plea," but then proceeded to explain that this rule applies only "[s]o long as the unconditional guilty plea is knowing and voluntary." 802 F.3d 28, 33 (1st Cir. 2015) ("*So long as the unconditional guilty plea is knowing and voluntary*, the *Tollett* rule applies" (emphasis added)). The obvious corollary is that if the unconditional guilty plea *is not* knowing and voluntary, then defendants may raise pre-plea issues on appeal. *See, e.g.*, *U.S. v. Scott*, 877 F.3d 30, 36 (1st Cir. 2017) ("To work around *Tollett*, Scott argues that his guilty plea was not voluntary. . . .").

Finally, not only does the Court have jurisdiction to review Mr. Davila's suppression issue, but reaching this issue in this case also makes good practical sense. Refusing to rule on this issue is not in the interests of justice because justice is not served by leaving an easily correctible error embedded in Mr. Davila's case. Nor is it in the interests of judicial economy because—again—leaving an easily correctible error in Mr. Davila's case will simply mean that, should he go to trial and lose, this Court will have to reverse and remand the case yet again. Given that there is no jurisdictional bar to this Court's correcting the district court's obvious error during the suppression

hearing, the Court should not hesitate to do so now, at the same time it vacates Mr. Davila's guilty plea and remands for further proceedings.

## III. Mr. Davila's standard supervised-release conditions must be reversed.

Mr. Davila's opening brief argues that the district court erred in imposing standard, nonmandatory supervised-release conditions for the first time in his written judgment, without mentioning them at the sentencing hearing. In response, the government says that 1) Mr. Davila's appeal waiver bars consideration of this claim (and that Mr. Davila has waived any right to challenge the appeal waiver by failing to raise a *Teeter* challenge to it in his opening brief); 2) because Mr. Davila failed to object, at sentencing, to the conditions of supervised release that appeared for the first time in his written judgment, he needs to show plain error (and he has again waived his right to make that showing by failing to argue plain error in his opening brief); and 3) the surprise imposition of standard supervised-release conditions in this case was, in any event, neither error nor prejudicial.

These arguments all fail. ***First***, the reason the appeal waiver doesn't bar Mr. Davila's attack on the surprise supervised-release conditions imposed in this case is because—while that waiver

encompasses his right to challenge his "sentence, including the terms and conditions of supervised release"—when nonmandatory supervised-release terms appear for the first time in a criminal judgment, they are "not a part of [the] sentence at all" and thus are not encompassed by an appeal waiver. (OB at 63 (quoting *U.S. v. Singletary*, 984 F.3d 341, 345 (4th Cir. 2021)). Mr. Davila made this argument—effectively: an argument that the appeal waiver's terms simply do not apply to the error he raises on appeal—in his opening brief. In answer, the government simply ignores that argument and instead—without addressing *Singletary*—assumes the appeal waiver applies and that Mr. Davila's only recourse is to argue miscarriage of justice under *Teeter*. This unargued assumption is meritless.

**Second**, the government's claim that plain error review applies to this issue because Mr. Davila didn't object before the district court is wrong. To be sure, Mr. Davila didn't object to the surprise imposition of nonmandatory supervised-release terms, which were imposed for the first time after the sentencing hearing in his written judgment. But there's a good reason for this: the district court didn't impose, incorporate into the judgment by reference, or even so much as mention

those conditions at Mr. Davila's sentencing hearing. Mr. Davila accordingly never had an opportunity to object to the imposition of these conditions, meaning this claim is adequately preserved and he need not show plain error. *See* Fed. R. Crim. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party."). Just like its appeal waiver argument, the government's claim that Mr. Davila needs to show plain error fails. Accordingly, so too do the government's associated briefing-deficiency arguments: that Mr. Davila waived his right to challenge the appeal waiver by failing to mount a *Teeter* attack on it and that he waived his right to attack the merits of the court's imposition of surprise supervised-release conditions by failing to argue plain error in his opening brief. Because Mr. Davila didn't need to challenge the appeal waiver, and didn't need to argue plain error in his opening brief, he cannot be faulted for failing to do so.

 *Finally*, turning to the merits, the government's arguments that the surprise imposition of supervised-release terms in this case was not error also fails. Quoting dicta from *U.S. v. Sepulveda-Contreras*, 466 F.3d 166 (1st Cir. 2006), the government contends that the surprise

imposition of standard supervised-release terms is not error because "[d]efendants are deemed to be on constructive notice for mandatory and standard conditions announced for the first time in a written judgment, and therefore have no right-to-be-present claim with respect to any such condition" (AB at 38 (quoting 466 F.3d at 169)).

There are two problems with this contention. First, Mr. Davila is not raising a "right-to-be-present claim"; his claim, instead, is that the surprise supervised-release conditions simply aren't a part of his sentence (*see* OB at 63). Second, and more fundamentally, to the extent *Sepulveda-Contreras*'s dicta suggests that district courts may impose standard supervised-release conditions for the first time in the written judgment (without even incorporating them by reference during the sentencing hearing), that dicta is not the law of this circuit. This Court's subsequent decision in *U.S. v. Nardozzi*, clarifies that while "a *mandatory* . . . condition [of supervised release] may be included in the written sentencing judgment without having been mentioned at sentencing," the same is not true of *standard* conditions, which only "may be *adopted by reference* at the sentencing hearing." 2 F.4th 2, 8 (1st Cir. 2021) (emphases added).

Bolstering the conclusion that *Nardozzi* accurately states First Circuit law is the fact that it and *Sepulveda-Contreras* both purport to rely on *U.S. v. Tulloch*, 380 F.3d 8 (1st Cir. 2004), to support their respective positions on whether the district court may or may not impose standard conditions of supervision for the first time, and by surprise, in the written judgment. To the extent *Sepulveda-Contreras* and *Nardozzi* disagree on the proper interpretation of *Tulloch*—i.e., to the extent *Nardozzi* interprets *Tulloch* to hold that courts must, at minimum, incorporate standard supervised-release conditions by reference at the sentencing hearing, whereas *Sepulveda-Contreras* interprets *Tulloch* to hold that that courts needn't mention standard supervised-release conditions at all before incorporating them in the written judgment—it's clear that *Nardozzi* is right and *Sepulveda-Contreras* is wrong. After all, this is how *Tulloch* summarizes its holding:

> In this opinion, we hold that a mandatory drug testing condition may be included in the written sentencing judgment without having been mentioned at sentencing. We also hold that the standard supervised release conditions set out in the United States Sentencing Guidelines may be adopted by reference at the sentencing hearing.

*Tulloch*, 380 F.3d at 10; *see also id.* at 14 ("[W]e see no potential for abuse in allowing courts to streamline sentencing proceedings *by incorporating by reference* [standard] conditions of supervised release" (emphasis added)).

Notwithstanding *Sepulveda-Contreras*'s dicta, the law in this circuit is accordingly that while mandatory conditions of supervised release may appear for the first time in the written judgment, standard conditions must—at minimum—be incorporated by reference during the sentencing hearing in order to become a part of the judgment in the case.[5] The district court's contrary procedure in this case was accordingly error and—as the government has not argued that the same exact standard conditions would be imposed following remand—it follows that this Court must vacate the standard conditions and remand

---

[5] Notably, holding otherwise would create a circuit split. *See U.S. v. Montoya*, 82 F.4th 640, 651 (9th Cir. 2023) ("If a [supervised-release] condition is discretionary, the district court must orally pronounce it in the presence of the defendant, without regard to how it is classified by the Guidelines" (collecting cases from Fourth, Fifth, Seventh, Tenth, and D.C. Circuits that reach same result)); *see also U.S. v. Hayden*, 102 F.4th 368, 372 (6th Cir. 2024) (district courts must, at minimum, incorporate "the standard conditions by reference to language contained in a publicly available districtwide order, an individual defendant's presentence investigation report, or other document provided to the defendant before sentencing").

for a hearing at which Mr. Davila can have a meaningful opportunity to object to those conditions.

## CONCLUSION

For reasons stated here and in Mr. Davila's opening brief, his plea was unintelligent and coerced, the court committed reversible error in denying his motion to suppress, and—regardless of the validity of his plea and appeal waiver—the court's error in imposing standard conditions of supervised release by surprise requires vacatur of the judgment and a remand.


Date: December 6, 2024          */s/ Miles Pope*
                                W. Miles Pope
                                Goddard Pope PLLC
                                967 E. Parkcenter Blvd., No. 1010
                                Boise, ID 83706

                                *Attorneys for Appellant*
                                *Alex David Davila-Olivo*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 6,443 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Century Schoolbook font.

**Signature:** <u>s/ Miles Pope</u>          **Date:** <u>December 6, 2024</u>

## CERTIFICATE OF SERVICE

I, Miles Pope, hereby certify that on December 6, 2024, this brief was served on the government by virtue of being filed through the First Circuit Court of Appeals' electronic filing system.

s/ Miles Pope